# STOCK PURCHASE AGREEMENT

AGREEMENT, made this day of February, 2004, by and among Bradford A. Dean, (150) shares; John S. Dean (120 shares); Glenn A. Scott, (120 shares); Jeffrey D. King, (100 shares); Thomas Melucci, (160 shares); Richard L. Bready, (350 shares), herein after called ("Sellers") with an address,155 Amaral Street, East Providence, Rhode Island 02914 and Patrick Crowe. having his principal place of business at 649 Fairfield Beach Road, Fairfield, Connecticut 06430 (hereinafter "Buyer"), and Dean Transportation Services, Inc., with an address of 155 Amaral Street, East Providence, Rhode Island 02914 (the "Company").

WITNESSETH:

WHEREAS, Sellers are the shareholders of all of the issued and outstanding shares of the capital stock of the Company consisting of 1000 shares of stock (the "Shares"); and

WHEREAS, the principal business of the Company is the delivery of freight for various customers; and

WHEREAS, Sellers desires to sell, and Buyer desires to purchase, the Shares.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and subject to the terms and conditions hereof, the parties agree as follows:

1. Sale of Shares.

At the Closing, Sellers shall sell, transfer, assign, convey and deliver to Buyer, and Buyer shall purchase, accept and acquire from Sellers, free and clear of any and all liens, security interests,

charges and encumbrances whatsoever, the Shares;

2. Purchase Price and Payment Terms. The purchase price for the Shares shall be payable as follows:

(a) At the Closing, the Company and Buyer shall assign to Sellers all of the accounts receivable of the Company existing as of the Closing Date in accordance with the agreed schedule provided at the closing (collectively, the "Accounts Receivable").

(b) Buyer acknowledges and agrees that, except as specifically provided below, Sellers are not hereunder selling, assigning, transferring, conveying or delivering to Buyer any of the cash or bank accounts of the Company existing as of the Closing and the Company and Buyer shall assign to Sellers all of such cash and bank accounts at the Closing, except for a maximum sum of $5,000 which shall remain with the Company. Promptly following the Closing, Buyer shall establish new bank accounts for the Company and all existing bank accounts shall be transferred to and become the property of Sellers.

(c) At the Closing, Buyer will pay Four Hundred Eighty Thousand Dollars ($480,000), which shall, inter alia, be used to pay in full that indebtedness owed by the Company to Fleet National Bank under that certain equipment loan (also referred to as Obligation 18) and shall execute and deliver a Promissory Note in the principal amount of $20,000 payable to Sellers, with interest, having a term of four (4) months (the "Promissory Note"). Contemporaneously with the execution of this Agreement by Buyer, Buyer shall wire the sum of $480,000 in immediately available funds to an account designated for such purpose by Sellers, which amount shall be held in

escrow, without interest, and applied to the payoff of the equipment loan with Fleet National Bank at the Closing, with any balance thereof being paid to Sellers. Further, as a condition to the Closing, each of Sellers shall be released from any and all personal guarantees given in favor of Fleet National Bank in connection with the equipment loan.

(d) At the Closing, Bradford A. Dean, John S. Dean, Glenn A. Scott and Jeffrey D. King shall assume all obligations of the Company existing as of the Closing Date under that certain working capital loan (also referred to as Obligation 34) and in accordance with the payoff letter dated January 28, 2004 from Fleet National Bank, as the payoff letter may be adjusted and/or modified at the Closing. The parties acknowledge that as of January 28, 2004 and in accordance with said payoff letter, the amounts due under the working capital loan to be assumed by Sellers at the Closing are as follows: principal ($299,146), interest ($423.79), appraisal charges ($1,000), legal fees ($1,950), and per diem charges ($35.32). Sellers shall not assume nor be responsible for any obligations or liabilities incurred by the Company or Buyer under the working capital loan from and after the Closing, and the Company and Buyer shall indemnify and hold harmless Sellers and their respective heirs and personal representatives for any and all such obligations and liabilities (including Sellers' reasonable attorneys' fees). The Company and Buyer shall not be responsible for any obligations or liabilities incurred by Sellers under the working capital loan from and after the Closing, and Sellers shall indemnify and hold harmless the Company and Buyer and their respective heirs, personal representatives, successors and assigns for any and all such obligations and liabilities (including the Company's and Buyer's reasonable

attorneys' fees). Further, as a condition to the Closing, each of Thomas Melucci and Richard L. Bready shall be released from any and all personal guarantees given in favor of Fleet National Bank in connection with the working capital loan.

(e) Except as specifically provided herein with respect to the working capital loan with Fleet National Bank, Buyer acknowledges and agrees that all liabilities and obligations of the Company currently existing and/or hereafter incurred or arising run with the Shares being acquired by Buyer and that Sellers shall have no liability or obligation therefor including, without limitation, any leases, loans, payroll obligations, taxes, contracts, accounts payable, pension plan contributions, legal fees (including legal fees of Partridge Snow & Hahn LLP incurred or existing on or before the Closing, which shall be paid by the Company and/or Buyer within sixty (60) days of the Closing Date) or otherwise, and that the Company and Buyer shall indemnify and hold harmless Sellers and their respective heirs and personal representatives for any and all such obligations and liabilities (including Sellers' reasonable attorneys' fees). Notwithstanding the foregoing, Buyer shall not be obligated to pay the legal fees incurred by Sellers in connection with consummation of this sale.

(f) Following the Closing, Sellers shall maintain control over the post office box of the Company for the purpose of ensuring that all pre-closing accounts receivable assigned to Sellers are collected by Sellers.

4. Closing.

The closing hereunder ("Closing") shall occur at such place, on such date and at such time as the parties shall mutually agree upon at the offices of Partridge Snow & Hahn LLP, but in no event

later than February 9, 2004 ("Closing Date"). **TIME IS OF THE ESSENCE FOR EACH OF THE PROVISIONS OF THIS AGREEMENT.**

5. Contract Period.

From the date hereof until the Closing Date, Sellers and the Company shall make available to Buyer all Company related matters, including, without limitation, all books and records, contracts, leases, customer files, employee records, engineering and environmental reports and any other item reasonably requested by Buyer, provided that in all cases Buyer shall keep confidential all information and data that Buyer has access to regarding the Company or Sellers and shall not disclose any of such information or data to any third party or use any of such information or data other than for purposes of conducting due diligence with respect to the transactions contemplated by this Agreement.

6. Instruments of Transfer.

At the Closing, Sellers shall deliver to Partridge Snow & Hahn LLP, Stock certificates representing the Shares free and clear of all liens and encumbrances and otherwise in accord herewith, to be held in escrow by Partridge Snow & Hahn LLP, and to be released to Buyer upon the earlier of six (6) months from the date of the Closing or the collection of the accounts receivable as set forth in Paragraph 21 hereof to an amount not more than Twenty Thousand Dollars ($20,000), provided however, that Buyer has paid the Security Deposit in accordance with the Lease to Amaral Street Associates, Inc., has paid in full the Promissory Note, and Buyer is not otherwise in default of the other obligations of Buyer hereunder.

7. Nondisclosure.

Each of the parties hereto agrees that prior to the Closing, no press release, Internet posting or other public or private announcement of any kind (including confirmation of any statement made

by a third party) concerning this transaction will be made without the advance written consent of all parties hereto. Nothing contained in the preceding sentence shall be deemed to limit the ability of any party hereto to make available to its officers, directors, investors, accountants or attorneys, on a need-to-know basis, any information obtained in connection with the due diligence review. Either party may disclose this transaction after Closing.

8. Change of Corporate Name.

Sellers consent to the use by Buyer or its designee of the name "Danis Transportation Services" or "Dean Transportation Services" or any variation thereof, from and after the Closing Date and Sellers agree not to use the name Danis Transportation or any variant thereof, in any corporate name under which it may do business after the Closing Date. Nothing to the contrary withstanding, Sellers may use the name Dean or Dean Transportation or any variation thereof from and after the Closing without any liability therefor to the Company or Buyer.

9. Restrictive Covenant.

For a period of one (1) year from and after the Closing Date, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Bradford A. Dean and John S. Dean will not become associated directly or indirectly with, render assistance, consultation, advice or guidance to, perform services for, serve as director or officer or member, or otherwise initiate, invest in or buy into (except a publicly traded company), control, incorporate, or otherwise participate in or be involved with any person, operation or business within New England which is in competition with the Company in the cargo transportation business.

Both Bradford A. Dean and John S. Dean acknowledge that the restrictions contained in this section 9 are reasonable and necessary in order to protect Buyer's legitimate interests and that any violation thereof would result in immediate and irreparable injury to the Buyer and the Company.

Both Bradford A. Dean and John S. Dean therefore acknowledge and agree that, in the event of any violation thereof, Buyer shall be authorized and entitled to obtain, from any court of competent jurisdiction, preliminary and permanent injunctive relief, as well as an equitable accounting of all profits or benefits arising out of such violation, which rights and remedies shall be cumulative and in addition to any other rights or remedies to which the Buyer may be entitled. Both Bradford A. Dean and John S. Dean represent and warrant that they have received full and adequate consideration for their within agreements and they have full power and authority to enter into such agreements.

Nothing to the contrary withstanding, Bradford A. Dean may continue to operate his warehouse business presently located in the State of Rhode Island and provide transportation services among and between warehouses, his warehouse customers and otherwise in connection with such warehousing business.

In addition, notwithstanding anything to the contrary contained in this Agreement, from and after the Closing, Bradford A. Dean shall continue as an employee of the Company on such terms and conditions as shall be mutually agreed upon by Bradford A. Dean and Buyer.

10. Tax Allocation.

The parties agree that the purchase price paid by Buyer hereunder shall, for income tax purposes, be Two Hundred Fifty Thousand Dollars ($250,000).

The parties agree to act in a manner consistent with this allocation and shall not take any steps inconsistent therewith.

11. Representations and Warranties of Sellers.

In addition to and not in derogation of the other representations, warranties and covenants of Sellers and/or the Company contained elsewhere herein, Sellers hereby represent, warrant and covenant to Buyer as follows:

(a) **Company is a corporation duly organized, validly existing, and in good standing under the laws of the State of Rhode Island, with all requisite corporate power and authority to own and operate its inventory and equipment, to carry out its business as now being conducted, and to enter into this Agreement and perform its obligations hereunder.**

(b) The execution, delivery and performance of this Agreement has been duly and validly authorized and approved by all necessary action, and Sellers represent that this Agreement constitutes a valid and legally binding obligation of Sellers enforceable in accordance with its terms. Sellers have the full right, power and authority to transfer ownership of the Shares to Buyer. Sellers represent that they own all of the Shares free and clear of any and all liens, pledges, security interests or encumbrances of any kind. Neither Sellers nor the Company is party to any agreement or order of court which would in any way affect their or its ability to perform hereunder, except for such agreements and undertakings entered into in connection with the equipment loan and working capital loan with Fleet National Bank. Except as set forth on Schedule 11(b), there are no lawsuits, actions, arbitrations, litigations or other similar proceedings presently pending or, to the knowledge of Sellers, threatened against the Company relating to, concerning, or involving its business, or any of its assets other than the information on the insurance company prepared loss runs, all of which are fully covered by insurance.

(c) As of the Closing, the Company will have good and valid title to all of the assets, tangible and intangible, owned by it and reflected on the Financial Statements delivered to the Buyer prior hereto, subject to no mortgages, pledges, liens, security

interests, or other encumbrances, except those in connection with the equipment loan and working capital loan with Fleet National Bank and those identified on Schedule 11(c).

(d) The capitalization of the Company consists of 1000 authorized shares, of which 1000 are issued and outstanding and which are owned in name and beneficiary by Sellers. There are no other shares, options, warrants or similar instruments or rights outstanding for the Company or any of its assets.

(e) Omitted.

(f) Omitted.

(g) From the date hereof through and including the Closing Date, neither Sellers nor the Company shall purchase or incur liabilities outside of the ordinary course of business without the prior consent of Buyer.

(h) Omitted.

(i) Omitted.

(j) The interim balance sheet of the Company as of November 30, 2003 and related statement of income (collectively, the "Financial Statements"), compiled by Jeffrey King, treasurer of the Company, present fully and fairly the financial position, results of operations, assets and liabilities of the Company as of such date.

(k) Since the date of the Financial Statements dated as of November 30, 2003, there have been no material changes in the financial condition of the Company from that reflected on the Financial Statements, other than changes occurring in the ordinary course of business and changes referred to or contemplated in this Agreement, provided that Buyer acknowledges that the Company has not made a profit and

continues to lose money since the date of the Financial Statements.

(l) Omitted.

(m) Omitted.

(n) Omitted.

(o) Omitted.

(p) Sellers make no representations or warranties as to the condition of the equipment of the Company and Buyer agrees to accept such assets in their "AS IS" condition, "WITH ALL FAULTS", and without warranty of any kind, expressed or implied, including, without limitation, any warranties of merchantability or fitness for a particular purpose.

(q) The Company owns no real property and but leases the premises located at 155 Amaral Street, East Providence, Rhode Island under a written lease with the owner thereof. As a condition to Closing, the Company shall enter into a new lease for the premises on such terms and conditions as shall be suitable to Buyer and the owner thereof.

(r) Omitted.

(s) Except as set forth on the Financial Statements and liabilities incurred in the ordinary course of business of the Company consistent with past practice, the Company has no liabilities or obligations of any nature, whether absolute or contingent.

(t) There is no pending or, to Sellers' knowledge, any threatened, claims, liens, encumbrances or other restrictions of any nature resulting from any liability of the Company or Sellers arising under or pursuant to any environmental laws, rules or regulations.

(u) To Sellers' knowledge, the Company possesses all permits, licenses and other authorizations which are required under applicable law to operate its business in the manner presently conducted, and such permits, licenses and other authorizations are valid and in effect as of the date hereof, and Sellers have received no notice that any governmental authority intends to cancel, terminate or fail to renew any of the same.

(v) The Company has at all times been, and through the Closing will be, insured with respect to its property and the operation and conduct of its business in such amounts and against such losses and risks as are set forth in the Company's insurance policies, each of which has been made available for Buyer's review.

(w) The Company has not since the date of the Financial Statements, and shall not from the date hereof through and including the Closing Date, issue, authorize, pay, or permit the authorization or payment of, (i) any dividend, or other distribution to shareholders of the Company, or (ii) any employee bonus, provided that this subsection (ii) shall not prohibit the payment of ordinary wages and bonuses consistent with past practice of the Company.

(x) The warranties and representations made by Sellers and the Company in this Agreement shall be true and correct as of the date hereof and as of the Closing Date and shall survive the Closing of the transactions contemplated under this Agreement for a period of one (1) year after the Closing.

13. Representations and Warranties of Buyer.

(a) Buyer acknowledges and represents that it has had access to and a reasonable opportunity to inspect Seller's books and records as the same relate to the determination of the value of the Shares conveyed hereunder.

(b) Buyer has all requisite power and authority to enter into this Agreement and perform Buyer's obligations hereunder. The execution, delivery and performance of this Agreement has been duly and validly authorized and approved by all necessary action, and Buyer represents that this Agreement constitutes a valid and legally binding obligation of Buyer enforceable in accordance with its terms. Buyer is not a party to any agreement or order of court which would in any way affect Buyer's ability to perform hereunder. There are no lawsuits, actions, arbitrations, litigations or other similar proceedings presently pending or, to the knowledge of Buyer, threatened against Buyer.

(c) The warranties and representations made by Buyer in this Agreement shall be true and correct as of the date hereof and as of the Closing Date and shall survive the Closing of the transactions contemplated under this Agreement for a period of one (1) year after the Closing.

14. Omitted.

15. Operations of Seller.

During the period commencing on the date hereof and ending on the Closing Date, the Company may not, without the prior written consent of the Buyer, except in the ordinary course of its business:

(a) Amend its Articles of Incorporation or By-laws (copies of which are attached hereto as Schedule 15(a));

(b) Issue or sell any shares, share-option, bonds, notes, or other corporate securities or obligations;

(c) Sell, assign, or transfer any of its assets, tangible or intangible;

(d) Mortgage, pledge, create a security interest in, or otherwise encumber any of its assets;

(e) Engage in any business or activity other than as presently engaged in; or

(f) Incur any obligation or liability exceeding $10,000 which cannot be terminated on thirty (30) days notice by the Company.

16. Records of Sellers.

For a period of seven (7) years following the Closing, Buyer shall retain and provide access to Sellers and/or Sellers' accountant the books of account and records of the Company pertaining to all periods prior to the date of Closing for use in connection with tax preparation and/or audits.

17. Survival of Representations, Warranties and Covenants.

All representations and warranties set forth herein shall survive the Closing only for the periods stated herein. All agreements of the parties which by their terms continue from and after the Closing shall survive the Closing.

18. Reliance.

Each party has made the representations and warranties set forth herein with the knowledge and expectation that the other party is placing complete reliance thereon as a material inducement to the transactions hereunder.

19. Brokerage.

Each party represents and warrants that there was no broker involved in this transaction and that there are no claims for brokerage commissions or finders fees in connection herewith by any other person or entity. Each party hereby agrees to indemnify and hold the other harmless from any

and all liability or loss arising as of the result of any liability to any broker or finder on the basis of any arrangement or agreement made by or on behalf of such party.

20. Notices.

Any notice required to be given hereunder shall be deemed validly given if in writing and delivered by certified mail, return receipt requested, addressed as follows:

(a) if to Sellers:

Bradford A. Dean, John S. Dean, Glenn A. Scott, Jeffrey D. King, Thomas Melucci and Richard L. Bready
c/o Brian J. Spero, Esquire
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

With a copy to:

Brian J. Spero, Esq.
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

(b) If to Buyer:

Patrick Crowe.
649 Fairfield Beach Road
Fairfield, Connecticut 06430

With a copy to:

Philip Toohey, Esq.
Lambert, Williams and Toohey
46 Main Street
New Canaan, Connecticut 06840

21. Accounts Receivable.

(a) From and after the Closing, Sellers shall have full power and authority to bill and/or collect all of the Accounts Receivable as defined in Paragraph 2(a) hereof on their

own behalf, and the Company and Buyer shall have no power or authority to bill, collect or otherwise deal with any of such Accounts Receivable. In the event that any Accounts Receivable as defined in Paragraph 2 (a) hereof payable to Sellers are received by the Company or Buyer following the Closing, the Company and Buyer shall hold such payments in trust for the benefit of Sellers and promptly remit such payments to Sellers in the form received.

(b) From and after the Closing, Sellers shall have the right to examine, copy and audit the Company's books and records during normal business hours with respect to the Accounts Receivable to verify all transactions concerning the same. Said examinations may be made by Sellers, one or more agents or employees of Sellers, or by one or more accountants or attorneys designated by Sellers.

22. Miscellaneous.

(a) This Agreement, together with the schedules and exhibits annexed hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any prior agreement or understanding between the parties or representations by either party.

(b) This Agreement cannot be modified, changed, discharged or terminated except by a writing signed by all of the parties.

(c) Neither Sellers nor Buyer may assign this Agreement and the obligations and rights hereunder in whole or in part, without the express prior written consent of the remainder of the parties hereto.

(d) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors, heirs, personal representatives and permitted assigns.

(e) The invalidity or unenforceability of any term, phrase, clause, article, paragraph or covenant hereof shall not affect the validity and enforcement of any other provision hereof.

(f) This Agreement shall be governed by the laws of the State of Rhode Island without reference to principles of conflicts of law thereof.

(g) All parties to this Agreement shall bear their own costs and expenses, including legal fees.

[Signatures appear on the immediately succeeding page.]

**IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.**

ATTEST:

______________________ By:______________________
Bradford A. Dean, (Seller)

______________________ By:______________________
John S. Dean, (Seller)

______________________ By:______________________
Glenn A. Scott, (Seller)

______________________ By:______________________
Jeffrey D. King, (Seller)

______________________ By:______________________
Thomas A. Melucci, (Seller) By Richard Bready Attorney in Fact

______________________ By:______________________
Richard L. Bready, (Seller)

ATTEST:

______________________ By:______________________
Patrick Crowe, (Buyer)

## SCHEDULE 11(b)

### Litigation

None.

# SCHEDULE 11(c)

**Liens**

Fleet National Bank

TranCentral, Inc.

# SCHEDULE 15(a)

## Articles of Incorporation and By-Laws

See attached.

720455_6/3596-1

Office of the Secretary of State
**Matthew A. Brown**
*Secretary of State*

# CERTIFICATE OF INCORPORATION
# OF

## Dean Transportation Services, Inc.

I, MATTHEW BROWN, Secretary of State of the State of Rhode Island and Providence Plantations, hereby certify that duplicate originals of Articles of Incorporation for the incorporation of

## Dean Transportation Services, Inc.

duly signed and verified pursuant to the provisions of Chapter 7-1.1 of the General Laws, 1956, as amended, have been received in this office and are found to conform to law. The affixed is a duplicate original of the Articles of Incorporation.

WITNESS my hand and the seal of the State of Rhode Island and Providence Plantations this 6th day of February, 2003.

Matthew Brown

*Secretary of State*

By Andrea M. Francese

Certificate/Form 100
Revised: 01/99

**Filing Fee: $150.00** **ID Number:** ____________

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Office of the Secretary of State
Corporations Division
100 North Main Street
Providence, Rhode Island 02903-1335

## BUSINESS CORPORATION

## ARTICLES OF INCORPORATION
**(To Be Filed In Duplicate Original)**

The undersigned acting as incorporator(s) of a corporation under Chapter 7-1.1 of the General Laws, 1956, as amended, adopt(s) the following Articles of Incorporation for such corporation:

1. The name of the corporation is **Dean Transportation Services, Inc.**

(This is a close corporation pursuant to § 7-1.1-51 of the General Laws, 1956, as amended.) (Strike if inapplicable.)

2. The period of its duration is (if perpetual, so state) **Perpetual**

3. The specific purpose or purposes for which the corporation is organized are:

**To carry on a general transportation business involving cargo transport, both intrastate and interstate; and to deal in, or buy and sell, goods, wares, merchandise, real estate, machinery, equipment, vehicles or other personal property of every class and description necessary or incident to the carrying on of a general transportation business and to engage in any other business activities permitted under R. I. G. L., 1956, as amended.**

4. The aggregate number of shares which the corporation shall have authority to issue is:

(a) *If only one class:* Total number of shares **8,000** (If the authorized shares are to consist of one class only state the par value of such shares or a statement that all of such shares are to be without par value.):

**Common Stock, .01¢ par value**

*or*

(b) *If more than one class:* Total number of shares ____________ (State (A) the number of shares of each class thereof that are to have a par value and the par value of each share of each such class, and/or (B) the number of such shares that are to be without par value, and (C) a statement of all or any of the designations and the powers, preferences and rights, including voting rights, and the qualifications, limitations or restrictions thereof, which are permitted by the provisions of Chapter 7-1.1 of the General Laws, 1956, as amended, in respect of any class or classes of stock of the corporation and the fixing of which by the articles of association is desired, and an express grant of such authority as it may then be desired to grant to the board of directors to fix by vote or votes any thereof that may be desired but which shall not be fixed by the articles.):

5. Provisions, if any, dealing with the preemptive right of shareholders pursuant to § 7-1.1-24 of the General Laws, 1956, as amended:

**See Exhibit A, attached hereto and incorporated herein.**

**FILED**
FEB 06 2003
By KMC
312722

Form No. 100
Revised: 01/99

6. **Provisions, if any, for the regulation of the internal affairs of the corporation:**

**See Exhibit B, attached hereto and incorporated herein.**

7. The address of the initial registered office of the corporation is **180 South Main Street** (Street Address, not P.O. Box) **Providence** (City/Town), RI **02903-7120** (Zip Code) and the name of its initial registered agent at such address is **Brian J. Spero, Esquire** (Name of Agent).

8. The number of directors constituting the initial board of directors of the corporation is **1** and the names and addresses of the persons who are to serve as directors until the first annual meeting of shareholders or until their successors are elected and shall qualify are: (If this is a close corporation pursuant to Section 7-1.1-51 of the General Laws, 1956, as amended, and there shall be no board of directors, state the titles of the initial officers of the corporation and the names and addresses of the persons who are to serve as officers until the first annual meeting of shareholders or until their successors be elected and qualify.)

| *Title* | *Name* | *Address* |
|---|---|---|
| **Director** | **Bradford A Dean** | **16 Jason's Grant Drive, Cumberland, RI 02864** |
| | | |
| | | |
| | | |

9. The name and address of each incorporator is:

| *Name* | *Address* |
|---|---|
| **Leonard B. Katzman** | **180 South Main Street, Providence, RI 02903** |
| | |
| | |

10. Date when corporate existence is to begin **Upon Filing**
(not prior to, nor more than 30 days after, the filing of these articles of incorporation)

Date: **February** 6**, 2003**

[signature]

Signature of each Incorporator

STATE OF **Rhode Island**
COUNTY OF **Providence**

In **Providence**, on this 6th day of **February**, **2003**, personally appeared before me **Leonard B. Katzman**, each and all known to me and known by me to be the parties executing the foregoing instrument, and they severally acknowledged said instrument by them subscribed to be their free act and deed.

Sharon Lee Wilcox

Notary Public
My Commission Expires: 3/4/2006

**Exhibit A**

The shareholders of the corporation shall be entitled to a pre-emptive right, for a period of thirty (30) days following the notice referred to below, to subscribe for, purchase or otherwise acquire, in the proportions which their holdings of the shares of common stock of the corporation bear to all of the issued and outstanding shares of common stock of the corporation, (i) any shares of the same class of the corporation, any equity shares and/or any voting shares of any class of the corporation which the corporation proposes to issue, or (ii) any rights or options which the corporation proposes to grant (a) for the purchase of shares of the same class of the corporation, any equity shares and/or any voting shares of any class of the corporation, or (b) for the purchase of any shares, bonds, securities or obligations of the corporation which are convertible into, or exchangeable for, or which carry any rights to subscribe for, purchase or otherwise acquire shares of the same class of the corporation, any equity shares and/or any voting shares of any class of the corporation, whether now or hereafter authorized or created, whether having unissued or treasury status, and whether the proposed issue, reissue, transfer or grant is for cash, property or any other lawful consideration. The pre-emptive right granted herein shall be deemed waived by any shareholder who does not so exercise it and pay for such shares, rights, options, bonds, securities or obligations within thirty (30) days after receipt of notice in writing from the corporation stating the price, terms and conditions of the offering. After the expiration of such thirty (30) day period, any and all of such shares, rights, options, bonds, securities or obligations of the corporation may be issued, reissued, transferred or granted by the corporation, as the case may be, to such persons, firms, corporations and associations, and for such lawful consideration, and on such terms as the corporation in its discretion may determine. As used herein, the terms "equity shares" and "voting shares" shall mean, respectively, shares which confer unlimited dividend rights and shares which confer unlimited voting rights.

The provisions contained herein are in lieu of the provisions regarding pre-emptive rights contained in Section 7-1.1-24 of the Rhode Island Business Corporation Act.

**Exhibit B**

1. The corporation may from time to time and in conformity with the provisions of the Rhode Island Business Corporation Act, distribute to its shareholders, directly or by the purchase of its own shares, a portion of its assets, in cash or property, out of the unreserved and unrestricted capital surplus of the corporation.

2. Except for those actions excluded by Section 7-1.1-30.3(b) of the Rhode Island Business Corporation Act, any action required or permitted to be taken at a meeting of shareholders may be taken without a meeting upon the written consent of all the shareholders entitled to vote thereon.

3. No director shall have personal liability to the corporation or to its shareholders for monetary damages for breach of such director's duty as a director, provided that this provision shall not eliminate or limit the liability of such director: (i) for any breach of the director's duty of loyalty to the corporation or to its shareholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under Section 7-1.1-43 of the Rhode Island Business Corporation Act; or (iv) for any transaction from which the director derived an improper personal benefit (unless such transaction is permitted by Section 7-1.1-37.1 of the Rhode Island Business Corporation Act).

4. The stock of the corporation is subject to transfer restrictions contained in its bylaws and copies thereof are on file at the registered office of the corporation. Certificates of stock of the corporation are transferable only upon compliance with the provisions of said transfer restrictions.

5. The corporation may provide, either in the corporation's bylaws or by contract, for the indemnification of shareholders, officers, employees and agents, by whomever elected or appointed, to the full extent presently permitted by law; provided, however, that if the applicable law is hereafter modified to permit indemnification in situations where it was not theretofore permitted, then such indemnification may be permitted to the full extent permitted by such law as amended.

# DEAN TRANSPORTATION SERVICES, INC.

## BYLAWS

### Article I

### OFFICES

**Section 1.01. Principal Office.** The principal office of the corporation shall be located in Cumberland, Rhode Island. The corporation may have such other offices or places of business, either within or outside the State of Rhode Island, as the Board of Directors may from time to time establish or the business of the corporation may require.

**Section 1.02. Registered Office and Registered Agent.** The registered office of the corporation need not be identical with the principal office of the corporation and shall be located at 180 South Main Street, Providence, Rhode Island. The registered agent and registered office may be changed from time to time by the Board of Directors in accordance with the provisions of the Rhode Island Business Corporation Act, as amended (the "Act").

### Article II

### SHAREHOLDERS

**Section 2.01. Annual Meeting.** The annual meeting of the shareholders shall be held at ten o'clock a.m. on the first Tuesday in the month of February in each year, for the purpose of electing directors and for the transaction of such other business as may come before the meeting. If the day fixed for the annual meeting shall be a legal holiday in the State of Rhode Island, such meeting shall be held on the next succeeding business day. If the election of directors shall not be held on the day designated herein for an annual meeting of the shareholders or at any adjournment thereof, the Board of Directors shall cause the election to be held at a special meeting of the shareholders as soon thereafter as is practicable.

**Section 2.02. Special Meetings.** Special meetings of the shareholders, for any purpose or purposes, unless otherwise prescribed by the Act, may be called by the President or by the Board of Directors, and shall be called by the President at the request of the holders of not less than ten percent (10%) of all outstanding shares of capital stock of the corporation entitled to vote at the meeting or upon the receipt by the corporation of a notice from a shareholder of such shareholder's intention to transfer shares of capital stock of the corporation pursuant to Article VI hereof.

**Section 2.03. Place of Meeting.** The Board of Directors may designate any place, either within or outside the State of Rhode Island, as the place of the annual or any special meeting of the shareholders. If no designation is made, the place of meeting shall be the principal office of the corporation.

**Section 2.04. Notice of Meeting.** Written notice stating the place, day and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall, unless otherwise prescribed by the Act, be delivered not less than ten (10) nor more than sixty (60) days before the date of the meeting, either personally, by mail or by facsimile, by

or at the direction of the President, the Secretary or the persons calling the meeting, to each shareholder of record entitled to vote at such meeting. If mailed, such notice shall be deemed delivered when deposited in the United States mail, addressed to the shareholder at the shareholder's address as it appears on the stock transfer books of the corporation, with postage prepaid thereon. If notice is given personally or by facsimile, notice shall be deemed delivered when received by a shareholder.

**<u>Section 2.05</u>. <u>Closing of Transfer Books or Fixing of Record Date</u>.** For the purpose of determining shareholders entitled to notice of or to vote at any meeting of shareholders or any adjournment thereof, or shareholders entitled to receive payment of any dividend, or in order to make a determination of shareholders for any other proper purpose, the Board of Directors may provide that the stock transfer books shall be closed for a stated period of not more than sixty (60) days ending on the date on which the particular action requiring such determination of shareholders is to be taken. If the stock transfer books shall be closed for the purpose of determining shareholders entitled to notice of or to vote at a meeting of shareholders, such books shall be closed for at least ten (10) days immediately preceding such meeting. In lieu of closing the stock transfer books, the Board of Directors may fix in advance a date as the record date for any such determination of shareholders, such date in any case to be not more than sixty (60) days prior to the date on which the particular action, requiring such determination of shareholders, is to be taken, or in the case of a meeting of shareholders, such date to be not less than ten (10) days prior to the date of such meeting. If the stock transfer books are not closed and no record date is fixed for the determination of shareholders entitled to notice of or to vote at a meeting of shareholders, or shareholders entitled to receive payment of a dividend, the date on which notice of the meeting is mailed or the date on which the resolution of the Board of Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of shareholders. When a determination of shareholders entitled to vote at any meeting of shareholders has been made as provided in this Section 2.05, such determination shall apply to any adjournment thereof. The record date for determining shareholders entitled to express consent in writing without a meeting, when no notice of meeting is mailed, shall be the day on which the first written consent is expressed.

**<u>Section 2.06</u>. <u>Quorum</u>.** The holders of a majority of the issued and outstanding shares of capital stock of the corporation entitled to vote, represented in person or by proxy, shall constitute a quorum at all meetings of the shareholders except as otherwise provided by the Act or by the articles of incorporation. If less than a quorum shall be present or represented at any meeting of shareholders, the holders of a majority of the shares so represented shall have the power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented.

**<u>Section 2.07</u>. <u>Voting of Shares</u>.** Each issued and outstanding share of capital stock with voting rights, unless limited, enlarged or denied by the articles of incorporation, shall be entitled to one vote upon each matter submitted to a vote at a meeting of shareholders. If a quorum is present at a meeting of shareholders, the affirmative vote of a majority of the shares represented in person or by proxy at the meeting shall be the act of the shareholders unless the vote of a greater number of shares is required by the Act or the articles of incorporation. The shareholders present or represented at any meeting at which a quorum shall be present may continue to transact business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum. Every shareholder entitled to a vote at a meeting of

shareholders or to express written consent without a meeting as herein provided may authorize another person or persons to act by written proxy executed by the shareholder or by the shareholder's duly authorized attorney-in-fact. No proxy shall be valid after eleven (11) months from the date of its execution, unless otherwise provided in the proxy.

**Section 2.08. Action by Written Consent.** Any action required or permitted to be taken at a meeting of the shareholders may be taken without a meeting if all of the shareholders entitled to vote thereon consent thereto in writing.

## Article III

## BOARD OF DIRECTORS

**Section 3.01. General Powers.** The business and affairs of the corporation shall be managed by its Board of Directors.

**Section 3.02. Number, Tenure and Qualifications.** The initial number of directors shall be four (4). The number of directors of the corporation may from time to time thereafter be further changed by resolution of the shareholders. Directors need be neither residents of Rhode Island nor shareholders of the corporation. The directors shall be elected at the annual meeting of the shareholders, and each director elected shall serve until the next succeeding annual meeting or until his or her successor shall have been elected and qualified or until such director's death or resignation or removal in the manner provided herein.

**Section 3.03. Vacancies.** Any vacancy occurring in the Board of Directors may be filled by the affirmative vote of a majority of the remaining directors though less than a quorum of the Board of Directors. A director elected to fill a vacancy shall be elected for the unexpired term of such director's predecessor in office. Any directorship to be filled by reason of an increase in the number of directors may be filled by the Board of Directors for a term of office continuing only until the next election of directors by the shareholders.

**Section 3.04. Removal.** The shareholders may, at any meeting called for the purpose, remove any director with or without cause by vote of a majority of the outstanding shares of the class or series of stock which elected the director or directors to be removed.

**Section 3.05. Resignations.** Any director may resign at any time by giving written notice to the Board of Directors or to the President. The resignation shall take effect at the time specified in the notice, and, unless otherwise specified in such notice, acceptance of the resignation shall not be necessary to make it effective.

**Section 3.06. Regular Meetings.** A regular meeting of the Board of Directors shall be held without notice other than by this Section 3.06 immediately after, and at the same place as, the annual meeting of shareholders. The Board of Directors may provide by resolution the time and place for the holding of additional regular meetings without notice other than such resolution.

**Section 3.07. Special Meetings.** Special meetings of the Board of Directors may be called by or at the request of the President or any one director. The person or persons authorized to call special meetings of the Board of Directors may fix the manner and the place for holding any special meeting of the Board of Directors called by such person or persons.

**<u>Section 3.08</u>. <u>Notice</u>.** Notice of any special meeting shall be given at least seven (7) days prior thereto by written notice delivered personally or mailed to each director at the director's business address (or, if no business address, then at the director's residence) or by facsimile. If mailed, such notice shall be deemed delivered when deposited in the United States mail, so addressed, with postage prepaid thereon. If notice is given personally or by facsimile, notice shall be deemed delivered when received by a director.

**<u>Section 3.09</u>. <u>Quorum</u>.** A majority of the number of directors of the corporation from time to time shall constitute a quorum for the transaction of business at any meeting of the Board of Directors, but if less than such a majority is present at a meeting, a majority of the directors then present may adjourn the meeting from time to time without further notice.

**<u>Section 3.10</u>. <u>Manner of Acting</u>.** The act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present shall be the act of the Board of Directors, unless a greater number is required by the Act or by the articles of incorporation. Meetings of directors may be held by means of a telephone conference circuit, and connection to such circuit shall constitute presence at such meeting.

**<u>Section 3.11</u>. <u>Action by Written Consent</u>.** Any action that may be taken by the Board of Directors at a meeting may be taken without a meeting if a consent or consents in writing, setting forth the action so to be taken, shall be signed before or after such action by all of the directors. Such written consent or consents shall be filed with the minutes of the proceedings of the Board of Directors.

**<u>Section 3.12</u>. <u>Presumption of Assent</u>.** A director of the corporation who is present at a meeting of the Board of Directors at which action on any corporate matter is taken shall be deemed to have assented to such action unless his or her dissent shall be entered in the minutes of the meeting or unless the director shall file a written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the Secretary of the corporation immediately after adjournment of the meeting. Such right to dissent shall not apply to a director who voted in favor of such action.

**<u>Section 3.13</u>. <u>Compensation</u>.** The Board of Directors may fix by resolution the compensation of directors and provide for payment of expenses of attendance at meetings. No such payment shall preclude any director from serving the corporation in any other capacity and receiving additional compensation therefor.

**<u>Section 3.14</u>. <u>Executive and Other Committees</u>.** The Board of Directors, by resolution adopted by a majority of the full Board of Directors, may designate from among its members an Executive Committee and one or more other committees each of which, to the extent provided in such resolution, shall have and may exercise any or all of the authority of the Board of Directors, provided that no such committee shall have the authority of the Board of Directors in reference to amending the articles of incorporation, adopting a plan of merger or consolidation, recommending to the shareholders the sale, lease, exchange or other disposition of all or substantially all the property and assets of the corporation otherwise than in the regular course of its business, recommending to the shareholders a voluntary dissolution of the corporation or a revocation thereof, or amending the bylaws of the corporation. The designation

of any such committee and the delegation thereto of authority shall not operate to relieve the Board of Directors, or any member thereof, of any responsibility imposed by law.

## Article IV

## OFFICERS

**Section 4.01. Number.** The officers of the corporation shall be a President, one or more Vice-Presidents if elected (the number thereof to be determined by the Board of Directors), a Secretary, a Treasurer and such other officers and agents as may be deemed necessary by the Board of Directors. Any two or more offices may be held by the same person. No officer need be a director or a shareholder of the corporation.

**Section 4.02. Election and Term of Office.** The officers of the corporation specifically designated in Section 4.01 of this Article IV shall be elected annually by the Board of Directors at its regular meeting held after the annual meeting of shareholders. If the election of officers shall not be held at such meeting, such election shall be held as soon thereafter as is practicable. Each officer shall hold office until his or her successor shall have been duly elected and qualified or until such officer's death or resignation or removal in the manner hereinafter provided.

**Section 4.03. Other Officers.** The Board of Directors may elect or appoint such other officers and agents, including one or more Vice-Presidents, one or more Assistant Secretaries and one or more Assistant Treasurers, as it shall deem necessary, each of whom shall hold office for such period and shall exercise such powers and perform such duties as are provided in these bylaws or as the Board of Directors may from time to time determine. The Board of Directors may delegate to any officer the power to appoint any such officers and agents and to prescribe their respective powers, duties and salaries.

**Section 4.04. Removal.** Any officer or agent may be removed by the Board of Directors whenever, in its judgment, the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer or agent shall not of itself create contract rights.

**Section 4.05. Resignations.** Any officer or agent may resign at any time by giving written notice to the Board of Directors or to the President or Secretary. The resignation shall take effect at the time specified in the notice and, unless otherwise specified in such notice, the acceptance of the resignation shall not be necessary to make it effective.

**Section 4.06. Vacancies.** A vacancy in any office because of death, resignation, removal, disqualification or otherwise may be filled in the manner prescribed in these bylaws for election or appointment to such office. In the case of a vacancy in any of the offices specifically designated in Section 4.01 of this Article IV, such vacancy shall be filled for the unexpired portion of the term of such office.

**Section 4.07. President.** The President shall be the principal executive officer of the corporation and, subject to the direction and under the supervision of the Board of Directors, shall have general charge of the business, affairs and property of the corporation, and control over its officers, agents and employees. The President shall, when present, preside at all

meetings of the shareholders and of the Board of Directors. The President shall execute, on behalf of the corporation, any deeds, mortgages, bonds, contracts or other instruments which the Board of Directors have authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or by these bylaws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed. The President shall do and perform all duties incident to the office of President and such other duties as may be assigned to the President by these bylaws or by the Board of Directors.

**Section 4.08. Vice-Presidents.** In the absence of the President or in the event of the President's death, inability or refusal to act, the Vice-President (or in the event there is more than one Vice-President, the Vice-Presidents in the order designated at the time of their election, or in the absence of any designation, then in the order of their election or listing in any resolution pertaining to their election) shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. A Vice-President shall perform such other duties as from time to time may be assigned to such Vice-President by the President or by the Board of Directors.

**Section 4.09. Secretary.** The Secretary shall: (a) keep the minutes of the proceedings of the shareholders and of the Board of Directors in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of these bylaws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents the execution of which on behalf of the corporation under its seal is duly authorized; (d) keep a record of the post office address of each shareholder which shall be furnished to the Secretary by such shareholder; (e) have general charge of the stock transfer books of the corporation; and (f) in general perform all duties incident to the office of Secretary and such other duties as from time to time may be assigned to the Secretary by the President or by the Board of Directors.

**Section 4.10. Treasurer.** The Treasurer shall: (a) have charge and custody of and be responsible for all funds and securities of the corporation; (b) receive and give receipts for monies due and payable to the corporation from any source whatsoever, and deposit all such monies in the name of the corporation in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of Article V of these bylaws; and (c) in general, perform all of the duties incident to the office of Treasurer and such other duties as from time to time may be assigned to the Treasurer by the President or by the Board of Directors. If required by the Board of Directors, the Treasurer shall give a bond for the faithful discharge of his or her duties in such sum and with such surety or sureties as the shareholders shall determine.

**Section 4.11. Salaries.** Except as provided in Section 4.03 of this Article IV, the salaries of the officers shall be fixed from time to time by the Board of Directors and no officer shall be prevented from receiving such salary by reason of the fact that such officer is also a director of the corporation.

## Article V

## CONTRACTS, LOANS, CHECKS AND DEPOSITS

**Section 5.01. Contracts.** The Board of Directors may authorize any officer or officers, or any agent or agents, to enter into contracts and agreements in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.

**Section 5.02. Loans.** No loans shall be contracted on behalf of the corporation and no evidences of indebtedness shall be issued in its name unless authorized by a general or specific resolution of the Board of Directors.

**Section 5.03. Checks, Drafts or Other Similar Orders.** All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the corporation, shall be signed by such officer or officers, or such agent or agents, of the corporation and in such manner as shall from time to time be determined by resolution of the Board of Directors.

**Section 5.04. Deposits.** All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the Board of Directors may select.

## Article VI

## CAPITAL STOCK

**Section 6.01. Certificates.** Certificates representing shares of capital stock of the corporation shall be in such form as shall be determined by the Board of Directors and shall be signed by the President or a Vice-President and the Secretary or an Assistant Secretary and sealed with the corporate seal.

**Section 6.02. Transfer Restrictions.** No shareholder shall transfer all or any part of such shareholder's capital stock in the corporation, now owned or hereafter acquired by such shareholder, without the written consent of the other shareholders, or, in the absence of such written consent, without first giving to the other shareholders and the corporation at least thirty (30) days prior written notice of such shareholder's intention to transfer such stock. As used herein, the term "transfer" shall include any sale, pledge, assignment, gift or other transfer of a shareholder's capital stock in the corporation by the shareholder or any personal representative of the shareholder or any representative of a creditor of the shareholder. The notice shall contain the price at which such shareholder is willing to transfer such stock and the name and address of the person to whom such shareholder intends to transfer such stock in the event such stock is not purchased by the corporation or the other shareholders as provided in this Section 6.02. Within said thirty (30) day period, a special meeting of the shareholders shall be called by the corporation. At such meeting, all of the stock which such shareholder proposes to transfer shall be offered for sale and shall be subject to an option to purchase on the part of the corporation, which option shall be exercised, if at all, at the time of such meeting. The shares of stock being offered may not be voted in favor of such a purchase by the corporation, but such shares shall be counted for purposes of determining the existence of a quorum at such meeting. The purchase

price to be paid by the corporation for such shares of stock shall be the price specified in the shareholder's notice delivered pursuant to this Section 6.02, and shall be payable in cash or by certified or bank check within sixty (60) days of the exercise of the option.

If all of the stock offered by a shareholder is not purchased by the corporation in accordance with the provisions of this Section 6.02, then the stock not so purchased shall be offered for sale and shall be subject to an option to purchase on the part of the other shareholders, which option shall be exercised, if at all, at the time of the meeting of shareholders called pursuant to the provisions of this Section 6.02. Each of the other shareholders shall have the right to purchase a portion of the shares of the offering shareholder subject to such option, which portion shall be equal to the number of such shares multiplied by a fraction, the numerator of which is equal to the number of shares owned by the shareholder desiring to exercise such option and the denominator of which is equal to the aggregate number of shares owned by all of the shareholders desiring to exercise such option. The purchase price to be paid by the other shareholders shall be the price specified in the shareholder's notice delivered pursuant to this Section 6.02, and shall be payable in cash or by certified or bank check within sixty (60) days of the exercise of the option.

If all of the stock offered by the shareholder is not purchased by the corporation or the other shareholders or by both in accordance with the provisions of this Section 6.02, then all restrictions imposed on the transfer of the remaining shares of such stock by this Section 6.02 shall forthwith terminate; provided, however, that if the offering shareholder does not transfer such remaining shares of stock in accordance with the notice given to the corporation and shareholders within sixty (60) days after the shareholders' meeting held to consider such shareholder's offer, the offering shareholder must again comply with the provisions of this Section 6.02.

Any notice required or provided for by the terms of this Section 6.02 shall be in writing and shall be sent by certified mail to each shareholder of record at his address as it appears on the stock transfer books of the corporation and to the corporation at its principal office.

The provisions of this Section 6.02 may be altered, amended or repealed only by the unanimous vote of all of the holders of the issued and outstanding shares of capital stock of the corporation entitled to vote thereon.

**Section 6.03**. **Encumbrances**. Notwithstanding any other provision of these bylaws, no shareholder shall pledge, hypothecate or otherwise encumber all or any part of such shareholder's stock in the corporation, now owned or hereafter acquired by such shareholder, without the written consent of the other shareholders.

## Article VII

## INDEMNIFICATION

Each person who was, is, or is threatened to be made a named defendant or respondent in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is, or was, a director or an officer of the corporation, or who, while a director or an officer of the corporation,

is or was serving at the request of the corporation as a director, officer, partner, trustee, employee or agent of another foreign or domestic corporation, partnership, joint venture, trust, other enterprise or employee benefit plan, shall be indemnified against judgments, penalties, fines, settlements and reasonable expenses (including attorneys' fees) actually incurred by such person in connection with any such action, suit or proceeding to the full extent permitted under Section 7-1.1-4.1 of the Act. The indemnification provided by this Article VII shall not be deemed exclusive of any other rights to which those persons seeking indemnification may be entitled under any bylaw, agreement, vote of shareholders or otherwise, and shall continue as to any person who has ceased to be a director or an officer and shall inure to the benefit of the heirs, executors and administrators of such person. The corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation, or who, while a director, officer, employee or agent of the corporation, is or was serving at the request of the corporation as a director, officer, partner, trustee, employee or agent of another foreign or domestic corporation, partnership, joint venture, trust, other enterprise or employee benefit plan, against any liability asserted against such person and incurred by such person in any such capacity or arising out of such person's status as such, whether or not the corporation would have the power or obligation to indemnify such person against such liability under the provisions of this Article VII or under Section 7-1.1-4.1 of the Act.

## Article VIII

## STOCK OF OTHER CORPORATIONS

Subject to any specific directions of the shareholders, any rights or powers which the corporation may have from time to time as the owner or holder of stock or any other security of any other corporation may be exercised on behalf of the corporation by the President of the corporation in such manner as the President shall from time to time determine; including, without limitation the right or power of the corporation to exercise at a meeting its voting rights under any such security, or to execute consents in lieu of a meeting, or to waive notice of any meeting, or to exercise or waive any subscription or other rights or options which the corporation may have or receive as such owner or holder, or to execute a proxy or proxies with respect to any such security. The Board of Directors may at any time, or from time to time grant authority to one or more officers of the corporation to dispose of any such securities of any other corporation or corporations on such terms and conditions, to such person or persons and at such time or times as such officer or officers may determine.

## Article IX

## GENERAL PROVISIONS

**Section 9.01. Fiscal Year.** The fiscal year of the corporation shall begin on the first day of January and end on the last day of December each year.

**Section 9.02. Corporate Seal.** The corporation shall have a corporate seal which shall be circular in form and shall have inscribed thereon the name of the corporation, the state of incorporation and the year of incorporation.

**Section 9.03. Waiver of Notice.** Whenever any notice is required to be given to any person under the provisions of these bylaws or under the provisions of the articles of incorporation or under the provisions of the Act, a waiver thereof in writing signed by the person

or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. The attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when a person attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors or shareholders need be specified in any written waiver of notice of such meeting.

## Article X

## AMENDMENTS

**Section 10.01**. **Shareholders' Agreements.** All, but not less than all, of the shareholders and the corporation may enter into a written agreement among themselves to limit the right to transfer shares of stock held by the shareholders; to require the transfer of shares of stock held by the shareholders under specified conditions or at specified prices; to limit, transfer or otherwise affect any right, power, privilege or immunity incident to shares of stock held by the shareholders. Promptly following the execution of any such written agreement (i) a copy of the agreement shall be filed with the corporation at its principal office, and (ii) the certificates representing the shares of capital stock of the corporation affected by such agreement shall be tendered to the corporation for its endorsement thereon of an appropriate legend noticing such agreement. The adoption of such an agreement shall be deemed to be an amendment to these bylaws effective as of the date of adoption and continuing for the term of such agreement. When such agreement is terminated, the amendment shall be deemed repealed, effective as of the date of such termination. In the event of a conflict between the provisions of any such agreement and the provisions of these bylaws, the provisions of the agreement shall be deemed to supersede the provisions hereof.

**Section 10.02**. **Required Approval.** Except as provided in Section 6.02 hereof regarding transfer restrictions, and in Section 10.01 hereof in connection with the adoption of shareholders' agreements, these bylaws may be altered, amended or repealed and new bylaws may be adopted by majority vote of the issued and outstanding shares of capital stock of the corporation at any annual or special meeting of the shareholders called for such purpose.

The undersigned, being the Secretary of Dean Transportation Services, Inc., a Rhode Island corporation, by signing below, hereby certifies that this is a true and correct copy of the bylaws of said corporation.

Dated: February 6, 2003

Jeffrey D. King, Secretary

674314_1/2332-1

# DEAN TRANSPORTATION SERVICES, INC.

## RESIGNATION

To the Board of Directors of Dean Transportation Services, Inc.:

The undersigned hereby resigns his directorship and office as President of Dean Transportation Services, Inc., a Rhode Island corporation, effective as of the date set forth below.

Dated: February 9, 2004

Bradford A. Dean

721757_1/3596-1

# DEAN TRANSPORTATION SERVICES, INC.

## RESIGNATION

To the Board of Directors of Dean Transportation Services, Inc.:

The undersigned hereby resigns his directorship and office as Vice President of Dean Transportation Services, Inc., a Rhode Island corporation, effective as of the date set forth below.

Dated: February 9, 2004

Glenn A. Scott

721759_1/3596-1

# DEAN TRANSPORTATION SERVICES, INC.

## RESIGNATION

To the Board of Directors of Dean Transportation Services, Inc.:

The undersigned hereby resigns his directorship in Dean Transportation Services, Inc., a Rhode Island corporation, effective as of the date set forth below.

Dated: February 9, 2004

Richard L. Bready

721760_1/3596-1

**DEAN TRANSPORTATION SERVICES, INC.**

**RESIGNATION**

To the Board of Directors of Dean Transportation Services, Inc.:

The undersigned hereby resigns his directorship in Dean Transportation Services, Inc., a Rhode Island corporation, effective as of the date set forth below.

Dated: February 9, 2004

Thomas A. Melucci
Thomas A. Melucci By Richard Brealy Attorney in Fact

721761_1/3596-1

# DEAN TRANSPORTATION SERVICES, INC.

## RESIGNATION

To the Board of Directors of Dean Transportation Services, Inc.:

The undersigned hereby resigns his office as Vice President of Dean Transportation Services, Inc., a Rhode Island corporation, effective as of the date set forth below.

Dated: February 9, 2004

John S. Dean

721762_1/3596-1

# DEAN TRANSPORTATION SERVICES, INC.

## RESIGNATION

To the Board of Directors of Dean Transportation Services, Inc.:

The undersigned hereby resigns his offices as Treasurer and Secretary of Dean Transportation Services, Inc., a Rhode Island corporation, effective as of the date set forth below.

Dated: February 9, 2004

Jeffrey D. King

721763_1/3596-1

...ate

... Shares

...rowe

9th, 2004

...from

No. of Shares Transferred.

...tificate

NUMBER 8

1,000 SHARES

INCORPORATED UNDER THE LAWS OF THE

STATE OF RHODE ISLAND



# DEAN TRANSPORTATION SERVICES, INC.

Authorized Shares 3,000 Common $.01 Par Value

This Certifies that Patrick Crowe is the owner of

One Thousand (1,000) Shares of the Capital Stock of

Dean Transportation Services, Inc.

transferable only on the Books of the Corporation by the holder hereof in person or by duly authorized Attorney on surrender of this Certificate properly endorsed.

In Witness Whereof, the duly authorized officers of this Corporation have hereunto subscribed their names and caused the corporate seal to be hereto affixed at this day of February A.D. 2004

President

Secretary

Shares Common $.01 Par Value Each.

© GOES N1

# Certificate

## Capital Stock

DEAN TRANSPORTATION SERVICES, INC.

ISSUED TO

Patrick Crowe

DATED

February 9th, 2004

The shares of capital stock represented by this certificate have not been registered under the Securities Act of 1933 and may not be sold or otherwise transferred unless: (i) a registration statement with respect thereto is effective under the Securities Act of 1933; or (ii) in the opinion of counsel reasonably satisfactory to the Corporation, such registration is not required.

A transfer of the shares of capital stock represented by this certificate is restricted under the provisions of Article VI of the bylaws of the Corporation, a copy of which will be furnished by the Corporation to any stockholder upon request.

For Value Received, ______ hereby sell, assign and transfer unto ______

______ Shares

of the Capital Stock represented by the within ...

NOTICE. MUST CORRESPO... FACE OF THE CE... ALTERATION OR...