Crown Financial, L.L.C.
16420 Park Ten Place, #125
Houston, TX 77084
281.646.2905 v
281.646.2909 f

**EQUIPMENT LEASE AGREEMENT**

This Equipment Lease Agreement is made by and between Crown Financial; L.L.C. ("Lessor") and the undersigned Lessee (hereinafter called "Lessee," whether one or more), under the following terms and conditions and thus,

**WITNESSETH:**

1. **DESCRIPTION OF LEASED PROPERTY:** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor all items of equipment described in the attachments 1 and 2 to this Lease (the "Leased Equipment").

2. **LEASE TERM:** The term of this Lease shall be sixty thirty day periods from closing, unless otherwise terminated pursuant to the terms of this Lease or applicable law.

3. **RENTAL PAYMENTS:** Lessee promises to pay Lessor, by wire transfer to the account designated by Lessor in Houston, Harris County, Texas (or at such other place as Lessor may designate in writing to Lessee from time to time), the amount of $22,500 per 30 day period (or any part thereof), in advance, beginning on the date of closing and on each 30th day anniversary thereafter for the term of this Lease. The monthly lease payment shall be reduced by five percent of the net proceeds received by Crown from the sale by Taylor & Martin of the 11 tractors purchased by Crown simultaneously with its purchase of the Leased Equipment. This reduction shall begin with the first 30 day period following Crowns receipt of the sale proceeds from Taylor & Martin. Each rental payment shall be payable by Lessee to Lessor, in advance, without deduction, abatement or setoff of any kind or nature whatsoever. Lessee's obligations to pay all rental and other monies due Lessor hereunder and to perform all other obligations hereunder are absolute, unconditional and independent of any obligation of Lessor hereunder. If a monthly rental payment is not paid on its due date, Lessee promises and agrees to pay Lessor, as additional rental hereunder, interest thereon at the maximum non-usurious rate of interest permitted by law from such due date until paid. P.80

4. **ADDITIONAL RENTAL PAYMENTS:** Lessor shall not be obligated to make any repairs or replacements, or to perform any maintenance whatsoever, to or on any item of equipment. In addition to the monthly rental payments provided by Section 3 hereof, Lessee agrees, at all times, without cost or expense to Lessor, to maintain each item of equipment in first-class condition and repair and to pay all costs, expenses, fees and charges incurred or required in connection with all titles, licenses and needed in connection with the Leased Equipment or incurred in connection with the storage, use, maintenance or operation of the Leased Equipment during the lease term. Such costs, expenses, fees and charges include, but are not limited to, all costs of repairs and maintenance, recording fees, filing fees, transfer fees, fines, towing and servicing charges, as well as all sales taxes, use taxes, excise taxes and ad valorem taxes, and any and all other assessments or local, state and federal governmental charges whatsoever and by whomever payable on all items of equipment or on the use, possession, rental, shipment, transportation, delivery or operation of all items of equipment which now are or may hereafter be imposed during the lease term. Ad valorem taxes, within the meaning of this Agreement, shall include any tax on rentals which is in substitution for or relieves Lessee from ad valorem taxes on each item of equipment which Lessee would otherwise be obligated to pay under the terms of this Section 4, or which is in addition to other ad valorem taxes on any such item of equipment. Lessee covenants and agrees to reimburse Lessor upon demand for the full amount of all costs, expenses, taxes, fees or other charges paid by Lessor under which the terms of this Agreement constitutes an obligation of Lessee. Lessee further covenants and agrees during the lease term to cause all items of equipment to be maintained, serviced and/or repaired in accordance with any applicable schedules therefor recommended by the manufacturer of such item of equipment which shall be performed only by skilled and qualified craftsmen, including, but not limited to, all necessary, required or suggested manufacturer's mechanical modifications, repairs, replacements and adjustments, and to take, or cause to be taken, all action necessary to keep any and all manufacturer's warranties on each item of equipment in full force and effect for the maximum periods provided by such warranties.

5. **DELIVERY AND RETURN:** Lessor shall not be liable to Lessee for any failure or delay in obtaining any item of equipment or in making delivery thereof. Lessee shall deliver each item of equipment to the place of delivery specified in the

attachment 1 at the sole cost and expense of Lessee. Lessee agrees to inspect, or cause to be inspected, each item of equipment immediately upon delivery to it or its agents, representatives or employees and further agrees that all items of equipment so delivered shall be conclusively presumed to have been in first-class condition and repair, free of defects and vices, whether apparent or not, structural or nonstructural, when so delivered and that Lessee has accepted each such item of equipment in the then condition thereof as being sufficient and satisfactory for any and all purposes for which such equipment is leased unless Lessee, within forty-eight (48) hours after such delivery, has notified Lessor in writing of any defects or unsatisfactory condition. Upon the termination of this Agreement as to any item of equipment, Lessee shall return such item of equipment to Lessor, at the sole cost and expense of Lessee and to the place specified by Lessor, in the same condition in which said item of equipment was received by Lessee, ordinary wear and tear excepted. All additions, attachments, accessories, improvements and replacements of parts of whatsoever kind or nature made or added by Lessee to any item of equipment shall automatically, and without cost or expense to Lessor, belong to and become the exclusive property of Lessor and shall be surrendered to Lessor upon the termination of this Agreement as to any such item of equipment, except as otherwise approved by Lessor in writing prior to making or adding the same and that can be removed without damage to such item of equipment.

6. **USE OF EQUIPMENT, COMPLIANCE WITH LAW, ASSIGNMENT AND SUBLETTING:** Lessee agrees that it will use or permit the use of each item of equipment only for the purposes for which such item of equipment was designated, strictly within the scope of such equipment manufacturer's specifications, for lawful purposes and only within the continental limits of the United States. Lessee shall attach to each item of equipment a sign or other form of notice required by law or by Lessor to protect or disclose the ownership interest of Lessor in each item of equipment and, without limiting the other provisions hereof, Lessee agrees, at its sole cost and expense, to remove any such sign or other form of notice at the termination of this Agreement as to such item of equipment and to repair any damage caused thereby. Lessee shall, upon reasonable notice, permit Lessor and its agents, representatives or employees, to inspect any item of equipment at any time and from time to time during the lease term. LESSEE AGREES THAT IT WILL NOT ASSIGN, TRANSFER, SUBLET OR LEASE ITS RIGHTS UNDER THIS AGREEMENT WITHOUT FIRST OBTAINING THE PRIOR WRITTEN CONSENT OF LESSOR, WHICH CONSENT LESSOR MAY WITHHOLD IN LESSOR'S SOLE DISCRETION. LESSEE WILL NOT PLEDGE, MORTGAGE, ENCUMBER OR SUBJECT TO, OR PERMIT TO EXIST UPON OR BE SUBJECTED TO, ANY LIEN, CHARGE OR ENCUMBRANCE UPON ANY ITEM OF EQUIPMENT OR ANY RIGHTS OF LESSEE UNDER THIS AGREEMENT, IN THE EVENT THAT ANY MECHANIC, LABORER OR MATERIALMAN FILES, OR ATTEMPTS TO FILE, CLAIMS OR ATTEMPTS TO CLAIM, ANY LIEN, CHARGE OR ENCUMBRANCE ON ANY ITEM OF EQUIPMENT, THEN, LESSOR, AT ITS OPTION, MAY, BY WRITTEN NOTICE TO LESSEE, DECLARE THIS AGREEMENT IN DEFAULT AND TERMINATED AS TO ALL OR ANY PORTION OF THE ITEMS OF EQUIPMENT WITHOUT PREJUDICE, WAIVER OR RELEASE OF ANY REMEDIES IN ITS FAVOR EXISTING UNDER THIS AGREEMENT, AT LAW OR IN EQUITY. Lessee shall comply with and conform to all applicable laws, ordinances and regulations relating in any way to the use, possession, operation, maintenance or rental of each item of equipment. Lessee further agrees not to remove or permit the removal of any item of equipment from the site specified on the applicable Lease Schedule as the principal location of such item of equipment unless and until Lessor has given its prior written consent to such removal. Lessee shall cause and permit each item of equipment to be operated only by Lessee's trained, qualified, skilled and competent employees and Lessee shall pay all costs and expenses of operating each item of equipment. P.81

7. **LIABILITIES, WARRANTIES AND IMMUNITIES:** Lessee specifically stipulates that Lessor shall have no liability for any acts or omissions of Lessee, its agents, representatives or employees, by reason or in consequence of the use, possession, operation, maintenance and/or rental of any item of equipment and Lessee expressly assumes all liability for any and all such acts or omissions. LESSEE UNDERSTANDS AND AGREES THAT LESSOR IS NOT THE MANUFACTURER OF ANY ITEM OF EQUIPMENT NOR THE MANUFACTURER'S AGENT NOR A DEALER THEREIN, THAT EACH ITEM OF EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY, QUALITY, DESCRIPTION AND MANUFACTURE SELECTED SOLELY BY LESSEE, THAT LESSOR MAKES NO WARRANTIES OR REPRESENTATIONS, EXPRESSED OR IMPLIED, OF MERCHANTABILITY, DURABILITY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, OR OTHERWISE OF ANY KIND OR NATURE WHATSOEVER WITH RESPECT TO ANY ITEM OF EQUIPMENT AND THAT THERE ARE NO SUCH WARRANTIES OR REPRESENTATIONS WITH RESPECT TO ANY SUCH ITEM OF EQUIPMENT ON THE PART OF LESSOR ARISING BY STATUTE OR OTHERWISE EXCEPT THOSE EXPRESSLY STIPULATED HEREIN. LESSEE FURTHER AGREES THAT LESSOR SHALL NOT BE LIABLE TO LESSEE OR ANY OTHER PARTY FOR ANY LOSS OR DAMAGE OF ANY KIND AND HOWEVER CAUSED BY ANY ITEM OF EQUIPMENT OR FOR THE REPAIR, MAINTENANCE OR SERVICE THEREOF, OR BY ANY DELAY OR FAILURE THEREOF, OR BY AN INTERRUPTION OF SERVICE OR LOSS OF BUSINESS OR DAMAGE WHATEVER AND HOWEVER CAUSED. LESSOR SHALL NEVER BE LIABLE TO LESSEE FOR ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR ANY REASON WHATSOEVER.

8. **INDEMNITY:** Without limiting any of the other terms of this Agreement and in addition to any insurance obtained pursuant to Sections 10 and 11 hereof, Lessee does hereby assume full and complete liability for and agrees to indemnify, protect, save, keep and hold harmless Lessor, its agents, representatives, employees, successors and assigns, from and against any and all losses, damages, injuries, claims, liabilities, demands and expenses (including attorney's fees, costs of court and other legal expenses, whether or not a lawsuit or other form of judicial proceeding is instituted by or against Lessor, its agents, representatives, employees, successors or assigns) of whatever kind and nature relating to, connected with or any way arising out of or on account of the possession, use, operation, maintenance, storage or condition (including, without limitation, latent or other defects and whether or not discoverable by Lessor) of any item of equipment and by whomever used, stored or operated during the term of this Agreement. The indemnity and assumption of liability in this Section 8 shall expressly survive the termination of this Agreement for the longest time provided by law.

9. **RISK OF LOSS, THEFT, DAMAGE OR DESTRUCTION AND SETTLEMENT THEREOF:** Lessee hereby assumes and agrees to bear any and all risks of damage, loss, theft or destruction, partial or complete, from every cause whatsoever, of each item of equipment and agrees that any and all necessary replacements, repairs or substitution of parts or equipment on any item of equipment or any of them shall be made by Lessee at Lessee's sole cost and expense. Monthly rental payments shall not be abated, diminished or otherwise affected by reason of any damage to, loss or destruction of any or all items of equipment.

10. **INSURANCE:** Without limiting any of the other terms of this Agreement, Lessee agrees at its sole cost and expense to keep each item of equipment insured against fire, theft, loss, damage, destruction and against such other risks and in such amounts as Lessor may require from time to time, and to maintain any other insurance on each item of equipment and/or in respect to damages arising from the possession, condition, maintenance, use, operation or storage thereof, and to post such bonds as may be required by Lessor or by applicable laws or regulations as a condition to the use or operation of any item of equipment in the jurisdiction where operated. All required insurance coverage shall name Lessor as loss payee and as additional insured, shall be insured by insurers acceptable to Lessor, shall cover the period from the Delivery Date of each item of equipment to the effective date of termination as to each item of equipment, shall provide for at least thirty (30) days written notice to Lessor before cancellation or reduction of coverage, shall cover the interest of both Lessor and Lessee in each item of equipment, or, as the case may be, shall protect both Lessor and Lessee in respect to risks arising out of the possession, condition, maintenance, use, operation or storage of each item of equipment and shall otherwise be acceptable to Lessor. Contemporaneously with the delivery of each item of equipment to Lessee, Lessee shall furnish Lessor with a certificate or other evidence satisfactory to Lessor of the maintenance of the required insurance coverage. The proceeds of any insurance received by Lessor on account of or for any loss or casualty which has been fully satisfied by Lessee shall be released to Lessee upon satisfactory proof to Lessor that such loss or casualty has been fully satisfied; provided, however, that if an event of default has occurred, Lessor at its option may use and apply all or part of such insurance proceeds to cure such event of default and may hold any amount remaining as security for Lessee's performance of its obligations under this Agreement. At closing, the Leased Equipment will be covered by insurance as specified by the Agreement among Lessor, Lessee and Patrick Crowe. This insurance shall be prepaid for a period of three months. Lessee will provide to Lessor on a monthly basis, three days in advance of the due date, the payment required to keep the insurance in force and Lessor will make the payment with the funds provided by the Lessee. Lessee does hereby designate and appoint Lessor as its agent and attorney-in-fact to file, process and prosecute claims under any and all insurance and to collect and apply the proceeds thereof as Lessor in its sole discretion deems advisable. Should Lessee fail to obtain and maintain any of the insurance coverage required by this Section 10, or if such insurance should be canceled or terminated for any reason whatsoever, Lessor may, but shall not be obligated to, purchase all or any part of such required insurance coverage or such other insurance coverage as Lessor may deem necessary to protect its interest only, and Lessee agrees to reimburse Lessor for the cost thereof, upon demand, as additional rental hereunder. Lessee covenants and agrees to notify Lessor of each accident or loss of or damage to any item of equipment within twenty-four (24) hours after the occurrence thereof and shall provide such written information as Lessor, its agents, representatives or employees, may request. Lessor shall have the right to inspect each such item of equipment and Lessee shall promptly advise Lessor of all claims and demands related to each such item of equipment, any action in connection therewith, and shall expend its best efforts to aid Lessor, its agents, representatives or employees in the investigation and defense of all such claims and demands and in the recovery of damages from third parties liable therefor. In the event of the theft, damage, destruction or loss resulting from an insured peril, this Agreement, as to such stolen, damaged, destroyed or lost item of equipment, at Lessee's election, will terminate and an adjustment in the rental due Lessor for the remainder of the lease term shall be made in the manner hereinafter provided. The amount of such rental adjustment shall be the difference between (i) the sum of the insurance proceeds paid to Lessor and the monthly rental payments received by Lessor prior to the theft, damage, destruction or loss and

P.82

(ii) the aggregate of all monthly rental payments and all other sums required to be paid by Lessee under the terms of this Agreement for the remainder of the lease term. If the amount determined in (ii) above is greater than the amount determined in (i) above, Lessee hereby covenants and agrees to pay such difference to Lessor upon demand as additional rental for the shortened term of this Agreement.

11. **LIABILITY AND WORKER'S COMPENSATION INSURANCE:** Lessee agrees, at its sole cost and expense, to keep each item of equipment insured against liability for bodily injury, death and property damage arising out of the possession, condition, maintenance, use, operation or storage of each such item of equipment with respect to bodily injury, death or damage to property, and to maintain any other insurance on each item of equipment and/or in respect to damages arising from the possession, condition, maintenance, use, operation or storage thereof, and to post such bonds as may be required by Lessor or by applicable laws or regulations as a condition to the use or operation of any item of equipment in the jurisdiction where operated. All liability insurance required hereunder shall name Lessor as an additional insured, shall be issued by insurers acceptable to Lessor, shall cover the period from the Delivery Date of each item of equipment leased to Lessee to the effective date of termination as to each such item of equipment, shall provide for at least thirty (30) days written notice to Lessor before cancellation or reduction of coverage, shall cover the interest of both Lessor and Lessee in each item of equipment, or, as the case may be, shall protect both Lessor and Lessee in respect to risks arising out of the possession, condition, maintenance, use, operation or storage of each item of equipment and shall otherwise be acceptable to Lessor. Lessee agrees that the limits stated herein are minimum limits and that Lessor may require Lessee to obtain and maintain insurance greater than such minimum limits on any such policy of insurance provided by Lessee. Lessee agrees, at its sole cost and expense, to obtain and maintain such worker's compensation insurance upon any or all of Lessee's agents, representatives or employees operating each item of equipment which may be required in any jurisdiction where such equipment may be operated. Such policies will be endorsed to provide a waiver of subrogation in favor of Lessor. Lessee agrees to deliver to Lessor, in the form of copies of policies or certificates of policies, as may be required by Lessor, all policies of insurance required under this Section 11.

12. **LIABILITY DEFAULTS:** In the event Lessee defaults in the payment of any monthly rental payment, additional rental or any other sums due and payable under this Agreement, or defaults in the performance of any other term, provision, agreement or covenant contained in this Agreement, or if Lessee fails to keep each item of equipment insured as required under this Agreement, or if any insurance coverage required under this Agreement is canceled or reduced or becomes impaired in the sole and exclusive judgment of Lessor, or if a voluntary or involuntary proceeding in bankruptcy, receivership, arrangement or insolvency is instituted by or against Lessee, or if in the sole and exclusive judgment of Lessor its rights under this Agreement are prejudiced or rendered insecure at any time, then, upon the happening of any such event (hereinafter called an "Event of Default"), Lessor at its option may by written notice to Lessee declare this Agreement in default and terminated as to all or any portion of the items of equipment without prejudice, waiver or release of any remedies in its favor existing under this Agreement, at law or in equity. The failure of Lessor to insist upon strict performance of any term, condition, agreement and/or covenant contained in this Agreement shall not be deemed a waiver of any rights or remedies that Lessor may have, and shall not be deemed a waiver of any subsequent breach or default in such term, condition, agreement and/or covenant. In the event of termination, Lessee agrees at its sole cost and expense to return to Lessor all items of equipment included in such written notice at such time and place and in the manner Lessor may specify and further agrees that Lessor, by its representatives, agents or employees, may take possession of all such items of equipment and, for that purpose, may enter upon any premises of Lessee. In any such events, the rights of Lessee in such items of equipment shall be terminated and Lessor, in its sole and exclusive discretion, may hold, use, lease, sell or otherwise dispose of any or all of such items of equipment without notice to, or obligation to account to, Lessee. Should Lessor elect or be required by applicable law to give notice of such sale, lease, or other disposition, Lessee agrees that written notice mailed as provided herein at least five (5) days prior thereto shall constitute reasonable notice to Lessee of any such action. Lessee agrees that any sale, lease or other disposition of any item of equipment for the purposes of this Section 12 shall be conducted in such manner, on such terms and for such amounts as Lessor in its sole and exclusive judgment shall deem advisable. Lessor's acceptance, repossession or subsequent use or disposition of any such item of equipment shall not constitute a release or waiver of any rights or remedies of Lessor. Lessor shall retain all monthly rental payments, additional rental and other sums paid with respect to each such item of equipment, all refunds or other sums, if any, in Lessor's possession and all proceeds from any sale, lease or other disposition of each such item of equipment. In addition, without offsets and credits of any kind, Lessor shall be entitled to recover from Lessee as liquidated damages and not as a penalty: (a) an amount equal to all unpaid monthly rental payments, additional rental and other sums which would have been due for the balance of the entire term of this Agreement for all items of equipment included in the written notice of default and termination referred to above; (b) all monthly rental payments, additional rental and other sums due and payable by Lessee pursuant to the provisions of this Agreement then owing and unpaid; and (c) all expenses, including court costs and attorney's fees, incurred by Lessor in the enforcement of its rights under this Agreement. In the event the foregoing

P.83

liquidated damages provision is unenforceable, or if it so elects, Lessor shall be entitled to an amount equal to the sum of (a)(b) and (c) in the preceding sentence, less the net proceeds of the sale, lease, or other disposition of such item or items of equipment. The remedies provided Lessor in this Agreement shall not be deemed to be exclusive but shall be in addition to all other remedies in its favor existing under this Agreement, at law or in equity. This Agreement shall continue in full force and effect as to all items of equipment, if any, which are not included in the written notice of default and termination referred to above. IT IS UNDERSTOOD AND AGREED THAT ANY DEFAULT BY LESSEE UNDER THIS AGREEMENT, WHETHER SUCH DEFAULT BE A PAYMENT OR PERFORMANCE DEFAULT, SHALL CONSTITUTE A DEFAULT UNDER ANY OTHER AND ALL OTHER LEASE AGREEMENTS (VEHICLE AND EQUIPMENT LEASE AGREEMENTS) MADE BY AND BETWEEN LESSOR AND LESSEE. It is understood and agreed that in the event Lessee has leased any vehicles and/or other items of equipment from Lessor, whether such vehicles and/or items of equipment are subject to this Agreement or any vehicle lease agreement or equipment lease agreement, as applicable, made by and between Lessor and Lessee, Lessor shall be entitled to recover from Lessee, out of the sale, lease or other disposition of any such vehicles and/or items of equipment, any deficiency Lessor may suffer or incur in the sale, lease or other disposition of the items of equipment leased hereunder.

13. **GENERAL PROVISION:** Each item of equipment described in each Lease Schedule, together with all additions, accessions and improvements of every kind or nature to such item of equipment, shall be owned by and all titles thereto shall be in the name of Lessor. THIS AGREEMENT IS AN AGREEMENT OF LEASE ONLY AND IS NOT TO BE CONSTRUED AS CONVEYING TO LESSEE ANY OWNERSHIP RIGHT, TITLE OR INTEREST IN OR TO ANY ITEM OR ITEMS OF EQUIPMENT EXCEPT THE RIGHT TO USE THE SAME AS PROVIDED HEREIN. Lessee's rights and interest under this Agreement are subject, subordinate and inferior to each and every term, condition and provisions of any contract or conditional sale, chattel mortgage or other security agreement executed heretofore or hereafter by Lessor covering any item of equipment, or any security interest in or other liens on any such item of equipment created by or pursuant to any such contract of conditional sale, chattel mortgage or other security agreement.

14. **PURCHASE OPTION:** Provided that this Lease is not in default and has not terminated or expired, Lessee shall have the option but not any obligation whatsoever to purchase the equipment described in attachment 1 to this Lease for the sum of $450,000. Exercise of this option by Lessee during the first three months of the Lease shall not relieve Lessee of the obligation to make Lease payments for those first three months. Notice of Lessee's intent to exercise the option must be given in writing, to Lessor, at least 30 days before termination of this Lease. Any net proceeds received by Lessor from the sale of the 11 tractors acquired by Lessor from Lessee contemporaneously with Lessor's acquisition from Lessee of the Leased Equipment shall be applied as a nonrefundable deposit by Lessee towards payment of the $450,000 amount of this purchase option. Lessee shall be responsible for paying, in addition to the purchase option price, any sales taxes or transfer fees due in connection with the exercise of this purchase option as well as any other costs or expenses incurred by Crown or for which Crown could be liable in connection with the sale of the Leased Equipment.

P.84

15. **MISCELLANEOUS:** Lessee represents and warrants that all credit and financial information submitted to Lessor herefore, herewith or any other time during the term of this Agreement is true, correct and complete in all respects and for the purpose of inducing Lessor to enter into this Agreement with Lessee. Lessee agrees to prepare or caused to be prepared and delivered to Lessor, promptly after receipt of Lessor's written request, at least once each year during the term of this Agreement, a current true, correct and complete financial statement of Lessee (reviewed or audited, if so prepared); failure to promptly deliver such financial statement shall be deemed an Event of Default hereunder. No agreement, covenant or condition of this Agreement may be waived except by written consent of Lessor and no forbearance or indulgence by Lessor in any regard whatever shall constitute a waiver of the agreement, covenant or condition to be performed by Lessee to which the same may apply; until complete performance by Lessee of said agreement covenant or condition, Lessor shall be entitled to invoke any remedy available under this Agreement, at law or in equity, despite such forbearance or indulgence. This Agreement, together with any and all Lessor's rights and benefits, may be assigned to any party for any reason without notice or consent of Lessee, and thereafter Lessor shall be released and relieved of all liability, obligation and responsibility under this Agreement, and Lessee specially covenants and agrees to look solely and exclusively to such successor in interest of Lessor for performance or satisfaction of such liability, obligation and responsibility; provided, however, Lessor shall not be released or relieved of any such liability, obligation or responsibility by reason or in consequence of any collateral assignment, pledge, mortgage, lien, encumbrance or other security agreement creating a security interest and no collateral assignee or secured party shall have any liability, obligation or responsibility under this Agreement of any kind whatever for any duty or covenant required to be performed by Lessor. This Agreement constitutes the entire and final understanding and agreement between the parties and there is no understanding or agreement, verbal or written, which is not set forth herein and this Agreement may not be changed or amended except by an instrument in writing signed by the party to be bound and may not be contradicted by evidence of prior,

contemporaneous or subsequent oral agreements; this Agreement (and amendments properly made hereto) shall be binding upon and shall inure to the benefit of Lessor, its successors and assigns, and shall be binding upon and shall inure to the benefit of Lessee, its heirs, executors, administrators, permitted successors and permitted assigns, provided, however, that (as specified in Section 6 hereof) no rights of Lessee under this Agreement shall inure to the benefit of any assignee of Lessee. There are no unwritten oral agreements between Lessor and Lessee. This Agreement is intended for general use in the United States. Should any term or provision hereof be in violation of or prohibited by any statute, ordinance or other law or regulation of any City or State where it is used, such term or provision shall be of no force and effect to the extent violative of or prohibited by such law or regulation without impairing or otherwise affecting any other term or provisions herein. Should any term or provision here be otherwise unenforceable where used, such unenforceability shall not impair or otherwise affect the remaining terms and provisions hereof. This Agreement and the rights and obligations of the parties hereunder shall be governed, construed, interpreted and determined by the laws of the State of Texas and venue for all purposes shall lie in Harris County, Texas. All notices required or provided for herein shall be made in writing, mailed postage prepaid by certified mail, return receipt requested, and if to Lessor addressed to it at 16420 Park Ten Place, Suite 125, Houston, Texas, 77084, and if to Lessee, effective when mailed addressed to Lessee at its address shown below, or at such other address as Lessor or Lessee shall hereinafter designate in writing from time to time.

Each of the undersigned represents and warrants that he is duly authorized to execute and delivery this Agreement in the capacity stated herein and that no other person is required to join in the execution and delivery hereof.

EXECUTED on this 6th day of February 2004.

| | |
|---|---|
| AGREED AND ACCEPTED: | AGREED AND ACCEPTED: |
| LESSOR: | LESSEE: |
| Crown Financial, L.L.C. | Dean Transportation Services, Inc. |
| By: [signature] | By: [signature] |
| Richard D. Tribe | Patrick Crowe |
| Title: Manager | Title: President |

P.85



C:\TEMP\Crowe Lease.doc

Patrick Crowe, Individually

By: ______________________
Patrick Crowe

P.86

Attachment 1 (Page 1 of 6)

## Storage Trailers

| | |
|---|---|
| 45128 | 1JJV452C5GL102263 |
| 45129 | |
| 9791 | 1TA114522G1125134 |
| 9874 | 1TA11452XG1125494 |
| 0223 | 1S12E8450G0277873 |
| T-26 | VF28FE218120 |
| 45125 | |
| 116 | 1DTV11W21EA162794 |
| 5316 | 8H0289319 |
| 22 | |
| 9715 | 1TA114521G1125058 |
| 480274 | 1S12E8481ME834582 |
| 480281 | 1S12E8482ME333957 |
| 4592 | B19663 |
| 290420 | 1H2V04823HA017147 |
| 242570 | BT000454 |
| 45514 | 1NNVF4526CM066301 |
| 480207 | 1NNVF4825KB018804 |
| 489602 | 1H2V04825KB018804 |
| 45536 | 1NNVF4520CM066276 |
| 489610 | |
| 4593 | |
| 45120 | 1BKK10VA22CE202059 |
| T 21 | VF24CE202346 |
| 480282 | 1S12E8486ME334495 |
| 32101 | |
| 45127 | 1JJV452C7GL102264 |
| 289314 | 1H2V04828HA005804 |
| 26 | VF28FE217120 |
| 45126 | 1JJV452C3GL101628 |
| 4571 | B05270 |
| 45535 | 1NNVF4425BM058884 |
| 45164 | HPZ604852 |

P.87

Page 2 of 6

# Dean Tractors

| Unit Number | Year | Make | Plate | Exp. Date | VIN Numbers | Valuation | Comment |
|---|---|---|---|---|---|---|---|
| 79 | 1994 | International | 40-014722 | 3/31/2001 | 1HTSDPPN3RH556450 | $6,000 | |
| 109 | 1994 | International | 40-013869 | 3/31/2001 | 1HTSDPPN3RH556456 | $6,000 | |
| 111 | 1991 | International | 40-021102 | 3/31/2001 | 1HTSDZ7N9MH316011 | $2,000 | |
| 519 | 1991 | Ford | 40-011683 | 3/31/2001 | 1FTYS95L2MVA33451 | $8,000 | |
| 521 | 1991 | Ford | 40-011684 | 3/31/2001 | 1FTY595L4MVA33452 | $8,000 | |
| 523 | 1992 | Ford | 40-014778 | 3/31/2001 | 1FTYS95LXNVA28063 | $8,000 | |
| 525 | 1992 | Ford | 40-014877 | 3/31/2001 | 1FYYS95L1NVA28064 | $8,000 | |
| 545 | 1994 | International | 40-019918 | 3/31/2001 | 1HSHBAZN1RH589664 | $10,000 | 40-015252 Old Plate |
| 547 | 1994 | International | 40-015253 | 3/31/2001 | 1HSHBAZN4RH589402 | $10,000 | |
| 549 | 1994 | International | 40-014659 | 3/31/2001 | 1HSHBAZNXRH569405 | $10,000 | |
| 1033 | 1994 | White | 40-014433 | 3/31/2001 | 4VIJDBBR8RR826246 | $12,000 | |
| 1035 | 1994 | White | 40-019919 | 3/31/2001 | 4V1JDBBEXRR826247 | $12,000 | 40-014492 Old Plate |

22 80's
1 74
5 96
1 98
1 91
10 90

40.

121 total

(29)

(87)

# DANIS TRANSPORTATION

## STATE OF MAINE

| UNIT NUMBER | YEAR | MAKE | PLATE # | EXP. DATE | VIN NUMBERS | STATE REG. | TITLE # | PUC | COMMENT |
|---|---|---|---|---|---|---|---|---|---|
| 53 | 1974 | Dorsey | | 2/28/2003 | 115542 | 03-73178 | | | |
| 588 | 1988 | Frue | | 2/28/2005 | 1H2V04823JH040604 | 05-69224 | 7094615 | | |
| 590 | 1988 | Frue | | 2/28/2005 | 1H2V04827JH040606 | 05-69225 | 7094616 | | |
| 591 | 1988 | Frue | | 2/28/2005 | 1H2V04829JH040607 | 05-69226 | 7094617 | | |
| 592 | 1988 | Frue | | 2/28/2005 | 1H2V04820JH040608 | 05-69227 | 7094618 | | |
| 599 | 1988 | Frue | | 2/28/2005 | 1H2V04828JH040615 | 05-69228 | 7094619 | | |
| 603 | 1988 | Frue | | 2/28/2005 | 1H2V04821JH040619 | 05-69229 | 7094620 | | |
| 605 | 1989 | Great Dane | | 2/28/2005 | 1GRAA962XKB165201 | 05-69230 | 7094653 | | |
| 615 | 1989 | Great Dane | | 2/28/2005 | 1GRAA9622KB165211 | 05-69231 | 7094654 | | |
| 618 | 1989 | Great Dane | | 2/28/2005 | 1GRAA9628KB165214 | 05-69232 | 7094655 | | |
| 620 | 1989 | Great Dane | | 2/28/2005 | 1GRAA9621KB165216 | 05-69233 | 7094656 | | |
| 4500 | 1989 | Trnsoft | | 2/28/2003 | 1TTF45204K1031827 | 03-73190 | 8577580 | | |
| 4608 | 1989 | Frue | | 2/28/2003 | 1H2V04820KB016607 | 03-79643 | | | |
| 15301 | 1996 | Mono | | 2/28/2004 | 1NNVA5328TM263824 | 04-53478 | | | TFC Textron |
| 15302 | 1996 | Mono | | 2/28/2004 | 1NNVA532XTM263902 | 04-53479 | | | TFC Textron |
| 15303 | 1996 | Mono | | 2/28/2004 | 1NNVA5328TM263848 | 04-53481 | | | TFC Textron |
| 15304 | 1996 | Mono | | 2/28/2004 | 1NNVA5322TM263859 | 04-53480 | | | TFC Textron |
| 15305 | 1996 | Mono | | 2/28/2004 | 1NNVA55325TM263645 | 04-53482 | | | TFC Textron |
| 48004 | 1989 | Strick | | 2/28/2003 | 1S12E8489KG314081 | 03-73193 | | | |
| 211172 | 1998 | Strick | | 2/28/2005 | 1S12E9450WD427713 | 05-69240 | 708151 | | |
| 289314 | 1987 | Frue | | 2/28/2003 | 1H2V04828HA005804 | 03-56785 | 7179942 | | |
| 290247 | 1987 | Frue | | 2/28/2003 | 1H2V04822HA013039 | 03-56777 | 7179939 | | |
| 290420 | 1987 | Frue | | 2/28/2003 | 1H2V04823HA017147 | 03-56778 | 7179940 | | |
| 290508 | 1987 | Frue | | 2/28/2003 | 1H2V04820HA017235 | 03-56779 | 7179941 | | |
| 293218 | 1989 | Frue | | 2/28/2003 | 1H2V04824KB000570 | 03-56780 | 7179943 | | |
| 293289 | 1989 | Frue | | 2/28/2003 | 1H2V04825KB000741 | 03-56781 | 7196427 | | |
| 293494 | 1989 | Frue | | 2/28/2003 | 1H2V04822KB028766 | 03-56786 | 7179944 | | |
| 480273 | 1991 | Strick | | 2/28/2005 | 1S12E848XME331650 | 05-44698 | 7094626 | | |
| 480274 | 1991 | Strick | | 2/28/2005 | 1S12E8481ME334562 | 05-44705 | 7094627 | | |
| 480275 | 1991 | Strick | | 2/28/2005 | 1S12E8481ME334503 | 05-44696 | 7094629 | | No Plate |
| 480276 | 1991 | Strick | | 2/28/2005 | 1S12E8489ME334507 | 05-44703 | 7094628 | | |
| 480277 | 1991 | Strick | | 2/28/2005 | 1S12E8485ME331668 | 05-44699 | 7094630 | | |
| 480278 | 1991 | Strick | | 2/28/2005 | 1S12E8486ME334563 | 05-44697 | 7094631 | | |
| 480279 | 1991 | Strick | | 2/28/2005 | 1S12E848XME333984 | 05-44701 | 7094632 | | |
| 480280 | 1991 | Strick | | 2/28/2005 | 1S12E8487ME334537 | 05-44704 | 7094633 | | |
| 480281 | 1991 | Strick | | 2/28/2005 | 1S12E8482ME333967 | 05-44700 | 7094634 | | |
| 480282 | 1991 | Strick | | 2/28/2005 | 1S12E8488ME334495 | 05-44702 | 7094635 | | |
| 480283 | 1990 | Great Dane | | 2/28/2005 | 1GRAA9628LB129505 | 05-69234 | 7094661 | | |
| 480284 | 1989 | Lufk | | 2/28/2005 | 1L01A4828K1086932 | 05-69239 | 7081765 | | |
| 480285 | 1989 | Theu | | 2/28/2005 | 1TA114824KG216150 | 05-69236 | 4081754 | | |

Page 3 of 6

Jul 28 04 04:01p Crown Financial 2816462909 p.11

Feb 06 04 01:26p Crown Financial 2816462909 p.4

15 7 14 3
91 90 2.80 39.93
40

(29)

# DANIS TRANSPORTATION

## STATE OF MAINE

| UNIT NUMBER | YEAR | MAKE | PLATE # | EXP. DATE | VIN NUMBERS | STATE REG. | TITLE # | PUC | COMMENT |
|---|---|---|---|---|---|---|---|---|---|
| 480286 | 1989 | Pine | | 2/28/2005 | 1PNV482S4KKB37646 | 05-69235 | 7081752 | | |
| 480287 | 1991 | Great Dane | | 2/28/2005 | 1GRAA9626MB009915 | 05-69238 | 7081753 | | |
| 480288 | 1990 | Great Dane | | 2/28/2005 | 1GRAA9625LB014604 | 05-69237 | 7094662 | | |
| 480289 | 1990 | Wanc | | 2/28/2003 | 1JJV482U0LL142223 | 03-73207 | 7234316 | | |
| 480290 | 1990 | Wanc | | 2/28/2003 | 1JJV482U6LL142467 | 03-73212 | 7234321 | | |
| 480292 | 1990 | Wanc | | 2/28/2003 | 1JJV482U0LL142397 | 03-73211 | 7234320 | | |
| 480293 | 1990 | Wanc | | 2/28/2003 | 1JJV482U8LL142308 | 03-73209 | 7234318 | | |
| 480294 | 1990 | Wanc | | 2/28/2003 | 1JJV482U6LL142386 | 03-73210 | 7234319 | | |
| 480295 | 1990 | Wanc | | 2/28/2003 | 1JJV482UXLL142164 | 03-73205 | 7234314 | | |
| 480296 | 1990 | Wanc | | 2/28/2003 | 1JJV482U8LL142163 | 03-73204 | 7234313 | | |
| 480297 | 1990 | Wanc | | 2/28/2003 | 1JJV482UXLL142214 | 03-73208 | 7234315 | | |
| 480298 | 1986 | Frue | | 2/28/2003 | 1H2V04826GE033351 | 03-56781 | 7196428 | | |
| 480299 | 1984 | Frue | | 2/28/2003 | 1H2V04829EE019814 | 03-56782 | | | |
| 480300 | 1990 | Wanc | | 2/28/2003 | 1JJV482U5LL137812 | 03-73203 | 7234312 | | |
| 483410 | 1985 | Strick | | 2/28/2003 | 1S12E9487FD266891 | 03-56783 | 7196429 | | |
| 484244 | 1985 | Strick | | 2/28/2003 | 1S12E9484FD271736 | 03-56784 | 7196430 | | |
| 489602 | 1989 | Frue | | 2/28/2003 | 1H2V04826KB018804 | 03-73197 | | | |
| 489603 | 1989 | Frue | | 2/28/2003 | 1H2V04827KB018805 | 03-73174 | | | |
| 490724 | 1989 | Strick | | 2/28/2003 | 1S12E8487KE314494 | 03-56787 | 7196431 | | |
| 490923 | 1989 | Strick | | 2/28/2003 | 1S12E8480KD317463 | 03-56788 | 7196432 | | |
| 494434 | 1989 | Strick | | 2/28/2003 | 1S12E8485KE309679 | 03-56789 | 7196433 | | |
| 495824 | 1989 | Strick | | 2/28/2003 | 1S12E8486KD313956 | 03-56790 | 7196434 | | |
| 804004 | 1990 | Great Dane | | 2/28/2003 | 1GRAA9627LB014608 | 03-55088 | 7094657 | | |
| 804005 | 1990 | Great Dane | | 2/28/2003 | 1GRAA9629LB014606 | 03-55089 | 7094658 | | |
| 804008 | 1990 | Great Dane | | 2/28/2003 | 1GRAA9624LB014609 | 03-55090 | 7094640 | | |
| 804491 | 1990 | Great Dane | | 2/28/2003 | 1GRAA9622LB168901 | 03-73194 | | | |
| 814003 | 1991 | Great Dane | | 2/28/2003 | 1GRAA9621MB009904 | 03-55082 | 7345491 | | |
| 814028 | 1991 | Great Dane | | 2/28/2003 | 1GRAA9622MB009927 | 03-55087 | 7345492 | | |
| 814030 | 1991 | Great Dane | | 2/28/2003 | 1GRAA9624MB009931 | 03-55086 | 7345493 | | |
| 814038 | 1991 | Great Dane | | 2/28/2003 | 1GRAA9629MB009939 | 03-55085 | 7345494 | | |
| 814042 | 1991 | Great Dane | | 2/28/2003 | 1GRAA9620MB009943 | 03-55084 | 7345495 | | |
| 814043 | 1991 | Great Dane | | 2/28/2003 | 1GRAA9622MB009944 | 03-55083 | 7345496 | | |
| 824113 | 1993 | Great Dane | | 2/28/2003 | 1GRAA962XPB017410 | 03-55091 | 7081750 | | |
| 864214 | 1986 | Great Dane | | 2/28/2003 | 1GRAA9621GS095039 | 03-55092 | 7094660 | | |
| 864489 | 1986 | Great Dane | | 2/28/2003 | 1GRAA9626GB147278 | 03-79886 | 7094659 | | |
| 864610 | 1987 | Great Dane | | 2/28/2003 | 1GRAA9620HB016624 | 03-55094 | 7094645 | | |
| 864738 | 1987 | Great Dane | | 2/28/2003 | 1GRAA9626HS014529 | 03-55095 | 7094648 | | |
| 864768 | 1987 | Great Dane | | 2/28/2003 | 1GRAA9621HS014543 | 03-55098 | 7094646 | | |
| 864843 | 1987 | Great Dane | | 2/28/2003 | 1GRAA9625HS014843 | 03-55105 | 7094649 | | |
| 864873 | 1987 | Great Dane | | 2/28/2003 | 1GRAA9623HS014679 | 03-55097 | 7094650 | | |

Page 4 of 6

1 lot 80's
79
94
90

2/8/05

27

# DANIS TRANSPORTATION
## STATE OF MAINE

18



Page 5 of 6

| UNIT NUMBER | YEAR | MAKE | PLATE # | EXP. DATE | VIN NUMBERS | STATE REG. | TITLE # | PUC | COMMENT |
|---|---|---|---|---|---|---|---|---|---|
| 874497 | 1987 | Great Dane | | 2/28/2003 | 1GRAA9826HB138372 | 03-55098 | 7094651 | | |
| 874572 | 1987 | Great Dane | | 2/28/2003 | 1GRAA9829HB174217 | 03-55099 | 7094647 | | |
| 874791 | 1987 | Great Dane | | 2/28/2003 | 1GRAA9825HS166927 | 03-55100 | 7094652 | | |
| 884082 | 1988 | Great Dane | | 2/28/2003 | 1GRAA9820JB085903 | 03-55101 | 7091832 | | |
| 884107 | 1988 | Great Dane | | 2/28/2003 | 1GRAA9825JB141518 | 03-55102 | 7091833 | | |
| 884134 | 1988 | Great Dane | | 2/28/2003 | 1GRAA9828JB141640 | 03-55103 | 7091831 | | |
| 894085 | 1989 | Great Dane | | 2/28/2003 | 1GRAA9827KB052009 | 03-55104 | 7094639 | | |
| 894117 | 1989 | Great Dane | | 2/28/2003 | 1GRAA9827KB073801 | 03-55106 | 7094642 | | |
| 894116 | 1989 | Great Dane | | 2/28/2003 | 1GRAA9829KB073802 | 03-73621 | 7094637 | | |
| 894165 | 1989 | Great Dane | | 2/28/2003 | 1GRAA9822KB070207 | 03-55108 | 7094638 | | |
| 894396 | 1989 | Great Dane | | 2/28/2003 | 1GRAA9828KB105302 | 03-55109 | 7094641 | | |
| 894414 | 1989 | Great Dane | | 2/28/2003 | 1GRAA982XKB105320 | 03-55110 | 7094644 | | |
| 911740 | 1989 | Great Dane | | 2/28/2003 | 1GRAA9822KB000285 | 03-55111 | 7094636 | | |
| 912146 | 1989 | Great Dane | | 2/28/2003 | 1GRAA9822KB150221 | 03-55112 | 7094643 | | |
| FB01 | 1979 | Trambla | | 2/28/2002 | 34271 | 02-38561 | | | |
| 45003 | 1994 | Trailmobile | | | 1PT01AAJ0R9003581 | 05-3002A | | | |
| 45007 | 1994 | Trailmobile | | | 1PT01AAJ8R9003585 | 05-3005A | | | |
| 216119 | 1987 | Pine | | | 1PND28181HKA24313 | | | | |
| 480220 | 1987 | Frus | | | 1H2V04825HH059701 | | | | |
| 804492 | 1990 | Great Dane | | | 1GRAA9824LB168902 | | | | |
| 804495 | 1990 | Great Dane | | | 1GRAA982XLB168905 | | | | |
| 804496 | 1990 | Great Dane | | | 1GRAA9821LB168906 | | | | |
| 804497 | 1990 | Great Dane | | | 1GRAA9826LB168907 | | | | |
| 804498 | 1990 | Great Dane | | | 1GRAA9825LB168908 | | | | |
| 804499 | 1990 | Great Dane | | | 1GRAA9827LB168909 | | | | |
| 804500 | 1990 | Great Dane | | | 1GRAA9823LB168910 | | | | |
| 804503 | 1990 | Great Dane | | | 1GRAA9829LB168913 | | | | |

Feb 06 04 01:28p Crown Financial 2816462909 p.7

# DANIS TRANSPORTATION
## TRANSCONTINENTAL

(11)

(14) 89'r.

| UNIT NUMBER | YEAR | MAKE | PLATE # | EXP. DATE | VIN NUMBERS | STATE REG. | TITLE # | PUC | COMMENT |
|---|---|---|---|---|---|---|---|---|---|
| 424452 | 1989. | Great Dane | | 2/28/2006 | 1GRAA9020KB158911 | 06-50609 | 76286267 | | |
| 424293 | 1989 | Great Dane | | 2/28/2006 | 1GRAA9026KB158919 | 06-50612 | 7628270 | | |
| 424291 | 1989 | Great Dane | | 2/28/2006 | 1GRAA9029KB158910 | 06-60606 | 7628268 | | |
| 424290 | 1989 | Great Dane | | 2/28/2006 | 1GRAA902XKB158918 | 06-50611 | 7628269 | | |
| 424294 | 1989 | Great Dane | | 2/28/2006 | 1GRAA9021KB158920 | 06-50613 | 7628271 | | |
| 424453 | 1989 | Great Dane | | 2/28/2006 | 1GRAA9022KB158912 | 06-50610 | 7628268 | | |
| 166 | 1984 | Dorsey | | 2/28/2006 | 1DTV11W27EA182783 | 06-50600 | | | |
| 6201 | 1984 | Dorsey | | 2/28/2006 | 1DTV11W25EA182779 | 06-50601 | | | |
| 116 | 1984 | Dorsey | | 2/28/2006 | 1DTV11W21EA182794 | 06-50602 | | | |
| 486 | 1989 | Great Dane | | 2/28/2006 | 1GRAA9629KB015401 | 06-50614 | 7628272 | | |
| 487 | 1989 | Great Dane | | 2/28/2006 | 1GRAA9620KB015402 | 06-50615 | 7628273 | | Junk-Al TFL |
| 488 | 1989 | Great Dane | | 2/28/2006 | 1GRAA9624KB015404 | 06-50616 | 7628274 | | |
| 489 | 1989 | Great Dane | | 2/28/2006 | 1GRAA9628KB015406 | 06-50618 | 7628276 | | |
| 4810 | 1989 | Great Dane | | 2/28/2006 | 1GRAA9626KB015405 | 06-50617 | 7628275 | | |

Page 6 of 6

# BILL OF SALE

## Vehicle Order

SELECTRUCKS™ FREIGHTLINER

SelecTrucks of Tampa LLC
6302 E. Hillsborough Ave.
Tampa, Florida 33610
(813) 630-0205

Attachment 2

Date: 02-04-04

Purchaser: Crown Financial LLC — Deliver to: Dean Transportation Service
(individual buyers name is to appear exactly as it appears on CDL)

Address: 16420 Park Ten Place, Suite 125, Houston, TX. 77084 — 2100 88th Street, North Bergen, N.J. 07047

Phone (281) 646-2905

Hereby offers to purchase from SELECTRUCKS OF TAMPA LLC 18 - 1997 Internationals 8100 T/A Day-Cabs

FOB ______________, Stock # ______________

Purchaser offers to pay the price listed below plus the below listed taxes, charges and fees for the vehicle as shown to the purchaser. Purchaser agrees to make payment for said vehicles and/or equipment according to the following terms and purchaser understands that delivery cannot be made until said terms are met. TERMS (show method of payment, by whom and when for deposit, down payment and/or trade-in and balance):

How were you referred to SelecTrucks of Tampa LLC ?

| Year | Make | Model | Vehicle Identification Number | Price |
|---|---|---|---|---|
| 1997 | International | 8100 T/A | 475993, 475994, 475990, 475988, 466361 | |
| | | | 475645, 466367, 466330, 475631, 475628 | |
| | | | 466360, 466332, 475996, 466362, 466369 | |
| | | | 475637, 475644, 466368 | |
| | | | 18,500.00 Ea. | 333,000.00 |

Additional items to be installed before delivery

| | |
|---|---|
| | |

| | | | |
|---|---|---|---|
| ESTIMATED DATE OF DELIVER: 02-05-04 | TRUCK PRICE | | 333,000.00 |
| PURCHASER REQUEST FINANCING: ☐ YES ☒ NO | LESS: TRADE OR DISS | | < N/A > |
| TRADE-IN INFORMATION | NET PRICE DIFFERENCE | | 333,000.00 |
| Year/Make: | TIRE FEE | $1.00 PER TIRE | N/A |
| Serial #: | ADMINISTRATION FEE - COST CONNECTED WITH MISC. FED EXP NOTARY & COURIER SERVICE | PER TK | N/A |
| Description: | BATTERY FEE | $1.50 PER BATTERY | N/A |
| Payoff To: | "TOTAL AMOUNT TAXABLE" | | |
| Phone #: | STATE SALES TAX | | Exempt |
| Address: | COUNTY SURCHARGE | | N/A |
| Payoff Amount: | ESTIMATED TAG, TITLE & LIEN FEES | | N/A |
| Good Till: | PLUS TRADE-IN PAYOFF | | N/A |
| Contact Person: | TOTAL PRICE | | 333,333.00 |
| LIEN INFORMATION | LESS DEPOSIT | | |
| | ADDITIONAL CASH DUE ON DELIVERY | | |
| | UNPAID BALANCE/AMOUNT TO FINANCE | | 333,333.00 |

Purchaser acknowledges receipt of a copy of the Order and agrees that upon acceptance this Vehicle Order becomes a Contract. Purchaser acknowledges that he has read the front and reverse side of this Order and upon its acceptance, Purchaser agrees to abide by these Terms and Conditions.

[signature] Salesman — Accepted SelecTrucks of Tampa LLC

x [signature] Purchaser

By: ______________

Official Title: ______________ Purchaser
S.T. Accepts Purchaser's Offer to Purchase

TERMS AND CONDITIONS on reverse side.

P.93